700 So.2d 1358 (1997)
CARL GREGORY CHRYSLER-PLYMOUTH, INC.
v.
Clarenzo D. BARNES and Felecia Rogers.
1960182.
Supreme Court of Alabama.
June 27, 1997.
Concurring Opinion July 1, 1997.
*1359 Simeon F. Penton of Kaufman & Rothfeder, P.C., Montgomery, for appellant.
C. Morris Mullin of Hatcher, Stubbs, Land, Hollis & Rothschild, Columbus, Georgia; and W. Banks Herndon of Loftin, Herndon & Loftin, Phenix City, for appellees.
Concurring Opinion of Justice Almon, July 1, 1997.
PER CURIAM.
Clarenzo Barnes and Felecia Rogers sued Carl Gregory Chrysler-Plymouth, Inc. ("Gregory"), alleging that Gregory had fraudulently forged Barnes's signature onto an automobile extended service contract. Gregory appeals from the trial court's denial of its motion to compel arbitration of Barnes and Rogers's claim. An order denying a motion to arbitrate is an appealable order. See Ex parte Brice Building Co., 607 So.2d 132 (Ala.1992).
In June 1995, Barnes and Rogers, an engaged couple, visited the Gregory dealership and purchased a used Hyundai automobile.[1] While selling the car, Gregory attempted also to sell Barnes and Rogers a "Used Vehicle Extended Service Agreement" ("the service agreement"), which would operate as an extended warranty on the Hyundai. Barnes and Rogers declined the offer. Barnes executed a "Retail Purchase Contract" ("the purchase contract") for the Hyundai. Barnes and Rogers then left the dealership with the Hyundai, and Gregory representatives told them that they would receive copies of the executed paperwork in the mail.
When Barnes and Rogers received the paperwork in the mail from Gregory, they discovered a fully executed service agreement for which Barnes had been charged $1,495;[2] Barnes's signature was on the agreement. Barnes and Rogers allege that Barnes's signature was a forgery and that Barnes and Rogers never agreed to purchase the service agreement. Barnes and Rogers do not dispute the authenticity of Barnes's signature on the purchase contract.
Gregory argues that this fraud claim should be submitted to arbitration. The purchase contract contained an arbitration clause stating the following:

*1360 "Buyer and Dealer agree that all claims, demands, disputes or controversies of every kind or nature that may arise between them concerning any of the negotiations leading to the sale of the vehicle, terms and provisions of the sale, the performance or condition of the vehicle, or any other aspects of the vehicle and its sale shall be settled by binding arbitration.... Without limiting the generality of the foregoing, it is the intention of the Buyer and Dealer to resolve by binding arbitration all disputes between them concerning the vehicle, the terms and meaning of any of the documents signed or given in connection with the sale of the vehicle, and any representations, promises or omissions made in connection with the financing, credit life insurance, disability insurance, and vehicle service contract purchased or obtained in connection with the vehicle. Either party may demand arbitration by filing with the American Arbitration Association a written demand for arbitration along with a statement of the matter in controversy."
The service agreement upon which the plaintiffs say Barnes's name was forged also contained an arbitration provision. However, Gregory does not rely on that arbitration provision in asking that this dispute be submitted to arbitration. Instead, it relies on the arbitration clause quoted above, from the purchase contract; that clause, Gregory claims, is sufficiently broad to apply to Barnes and Rogers's claim. Gregory notes that the arbitration clause in the purchase contract provides for arbitration of all disputes "concerning any of the negotiations leading to the sale of the vehicle, terms and provisions of the sale, the performance or condition of the vehicle, or any other aspects of the vehicle and its sale," and Gregory notes that it specifically mentions service agreements: "all disputes between [the buyer and the dealer] concerning the vehicle, the terms and meaning of any of the documents signed or given in connection with the sale of the vehicle, and any representations, promises or omissions made in connection with the financing, credit life insurance, disability insurance, and vehicle service contract purchased or obtained in connection with the vehicle" are subject to arbitration.
In Allied-Bruce Terminix Companies v. Dobson, 513 U.S. 265, 115 S.Ct. 834, 130 L.Ed.2d 753, (1995), the United States Supreme Court held that the Federal Arbitration Act governs all contracts falling within Congress's powers under the Commerce Clause. The federal policy favoring arbitration was recognized by this Court in Allied-Bruce Terminix Companies v. Dobson, 684 So.2d 102 (Ala.1995) (on remand from the United States Supreme Court following that Court's Terminix decision). In that opinion, this Court quoted Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25, 103 S.Ct. 927, 941-42, 74 L.Ed.2d 765 (1983):
"`The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or like defense to arbitrability.'"
Allied-Bruce Terminix, 684 So.2d at 107.
The first task of this Court, when reviewing an arbitration provision, is to determine whether the parties agreed to arbitrate the dispute at hand. We find no agreement to arbitrate the dispute in this case. Although the arbitration provision Gregory relies on is broad, it is clear that it does not compel arbitration of Barnes and Rogers's claim. The dispute here does not concern the negotiations leading to the sale of the Hyundai, nor does it concern the terms and provisions of the sale, the performance or the condition of the Hyundai, or any other aspect of the vehicle or its sale. The dispute arises solely from Gregory's alleged forgery of Barnes's signature onto the service agreement. The fact that the arbitration provision mentions service contracts does not compel arbitration of this dispute, because Barnes says the only reason he has a service agreement is that his name was forged onto it this alleged forgery is the heart of the fraud alleged in this case.
The United States Supreme Court has stated that "courts should remain attuned to well-supported claims that the *1361 agreement to arbitrate resulted from the sort of fraud ... that would provide grounds `for the revocation of any contract.'" Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 627, 105 S.Ct. 3346, 3354, 87 L.Ed.2d 444 (1985). While this is true, courts should be even more attuned to claims that the agreement from which arbitration allegedly stems was, in fact, a forged document, which would not even provide the basis from which a court could find a valid contract to be revoked; it is impossible to revoke a contract that never existed. Certainly, if the facts are as Barnes and Rogers allege, the service agreement here has never even existed as a valid contract. Although separate contractual documents may arise from a single transaction and thus be subject to an arbitration provision in a "master agreement," see Reynolds & Reynolds Co. v. King Automobiles, Inc., 689 So.2d 1 (Ala.1996), the service agreement here cannot be subject to the purchase contract arbitration clause because its very existence is in dispute, because of the alleged forgery. We further note that, contrary to Gregory's contentions, the claims made by Barnes and Rogers are entirely dissimilar to those found by this Court to be arbitrable in Ex parte Gates, 675 So.2d 371 (Ala.1996), none of which entailed the forgery of a document relied upon to help bring the dispute into arbitration.
A party cannot be required to arbitrate a dispute that he or she did not agree to arbitrate. Capital Investment Group, Inc. v. Woodson, 694 So.2d 1268 (Ala.1997). For these reasons, the trial court correctly denied Gregory's motion to arbitrate Barnes and Rogers's fraud claim. Therefore, the order of the trial court denying arbitration is affirmed.
AFFIRMED.
SHORES, KENNEDY, and COOK, JJ., concur.
ALMON, J., concurs specially.
BUTTS, J., concurs in the result.
HOOPER, C.J., and MADDOX, HOUSTON, and SEE, JJ., dissent.
ALMON, Justice, concurring specially.
I concur to affirm the denial of the motion to compel arbitration filed by Carl Gregory Chrysler-Plymouth, but I do so for a reason different from that given in the main opinion. Carl Gregory is relying upon the arbitration clause in the purchase contract, not the arbitration clause in the service contract that Barnes says he did not sign. Thus, if the arbitration clause in the purchase contract is enforceable, and if it may be applied to a dispute over whether there is a "vehicle service contract purchased or obtained in connection with the vehicle," it seems to me that the motion to compel arbitration would not be defeated by an assertion that the purported signature on the service contract is a forgery.
However, I do not think the circuit court erred in declining to apply the arbitration clause in the sales contract to a dispute over whether the parties entered into a separate service contract. These are two independent contracts, if they are contracts at all. The question here is whether to specifically enforce a predispute arbitration agreement. Specific enforcement is an equitable remedy. I would hold that a court may find it inequitable for a party in a superior bargaining position to insert arbitration clauses in a series of independent contracts and to word each of those arbitration clauses to cross-reference the other contracts. By this means, if the purported arbitration clause in a purported contract is not enforceable, the party seeking to compel arbitration could nevertheless, if allowed to do so, force arbitration of a dispute over the purported contract simply by putting an arbitration clause in another contract. A court could reasonably find that such cross-referencing of arbitration clauses is an inequitable practice. I see no error in the circuit court's decision not to order the arbitration clause in one contract specifically performed so as to resolve a dispute over whether the parties had entered into another independent and separate contract.
HOOPER, Chief Justice, dissenting.
The main opinion's focus on the allegedly forged document is misplaced. The fact that *1362 Barnes's signature may have been forged on the service agreement has no impact on whether in the retail purchase contract Barnes agreed to arbitrate all claims relating to the vehicle or its sale. Barnes signed a retail purchase contract that contained an arbitration clause broad enough to encompass the fraud claim asserted by Barnes in this action. Barnes does not dispute the validity of that document. Therefore, I must respectfully dissent.
Those joining the main opinion do not believe that there is an agreement to arbitrate the dispute involving the alleged forgery of Barnes's signature on the service agreement. Gregory does not claim that arbitration should be compelled based upon the arbitration agreement in the service contract. Instead, Gregory relies on the arbitration agreement in the retail purchase contract.
It is undisputed that at the time of the sale Barnes signed a retail purchase contract that contained the following arbitration clause:
"Buyer and Dealer agree that all claims, demands, disputes or controversies of every kind or nature that may arise between them concerning any of the negotiations leading to the sale of the vehicle, terms and provisions of the sale, the performance or condition of the vehicle, or any other aspects of the vehicle and its sale shall be settled by binding arbitration conducted pursuant to the provisions of 9 U.S.C. § 1 et seq. and according to the Commercial Rules of the American Arbitration Association. Without limiting the generality of the foregoing, it is the intention of the Buyer and Dealer to resolve by binding arbitration all disputes between them concerning the vehicle, the terms and meaning of any of the documents signed or given in connection with the sale of the vehicle, and any representations, promises or omissions made in connection with the financing, credit life insurance, disability insurance, and vehicle service contract purchased or obtained in connection with the vehicle...."
Gregory relies on this agreement as the basis for its request that the forgery claim be submitted to arbitration; and it claims that the agreement is sufficiently broad to encompass claims relating to the alleged forgery of the extended service agreement.
The arbitration agreement in the sales contract states that "all ... controversies of every kind or nature ... concerning any of the negotiations leading to the sale of the vehicle, terms and provisions of the sale, the performance or condition of the vehicle, or any other aspects of the vehicle and its sale shall be settled by binding arbitration." (Emphasis added.) Because the arbitration agreement covers "all ... controversies" relating to the sale of the used automobile, it includes controversies relating to the purchase of a service agreement, e.g., a dispute as to whether Barnes declined to purchase the service agreement offered to him at the time of the sale and whether his signature on that document was, in fact, forged. Therefore, the fraud claim asserted by Barnes and Rogers is encompassed within the arbitration clause contained within the valid purchase contract.
In support of its position that the trial court properly denied Gregory's motion to compel arbitration, the main opinion states:
"The United States Supreme Court has stated that `courts should remain attuned to well-supported claims that the agreement to arbitrate resulted from the sort of fraud ... that would provide grounds "for the revocation of any contract."' Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 627, 105 S.Ct. 3346, 3354, 87 L.Ed.2d 444 (1985). While this is true, courts should be even more attuned to claims that the agreement from which arbitration allegedly stems was, in fact, a forged document...."
700 So.2d at 1360-61. Barnes admits signing the purchase contract and does not dispute the authenticity of his signature on that document. Therefore, the main opinion's warning that courts should be "attuned to claims that the agreement from which arbitration allegedly stems was, in fact, a forged document," 700 So.2d at 1361, is misplaced, because the document upon which arbitration is predicated was not forged.
In addition, although the claims asserted by Barnes and Rogers are "dissimilar" from *1363 those brought in Ex parte Gates, 675 So.2d 371 (Ala.1996), the main opinion's attempt to distinguish that case solely because it did not involve a forged document is inaccurate and misleading. In Ex parte Gates, this Court held that the defendants had not waived their right to arbitration and that the arbitration clause in a contract for the sale of a mobile home was sufficiently broad to encompass the plaintiff's claims alleging breach of warranty, fraud, negligence, wantonness, and violation of the Magnuson-Moss Warranty Act. Similarly, the arbitration clause in the purchase agreement signed by Barnes is comparable to the arbitration agreement in Ex parte Gates in that it is a broad agreement that encompasses the claims raised by the plaintiffs. Because of the broad coverage of the arbitration agreement in the purchase contract signed by Barnes, the claim based on the alleged forgery of the service contract is subject to the arbitration agreement.
I must dissent from the main opinion's conclusion that the arbitration agreement in the purchase contract was not broad enough to encompass the fraud claim asserted by Barnes and Rogers, and I conclude that the trial court erred by not requiring that that claim be submitted to binding arbitration.
HOUSTON and SEE, JJ., concur.
MADDOX, Justice, dissenting.
If the automobile dealer in this case was attempting to enforce an arbitration agreement that was forged, then certainly the claim would not be subject to arbitration. In short, how could a person be forced to arbitrate a question of the validity of an agreement to arbitrate? He or she could not be.
The main opinion attempts to frame that as the issue in this case. It is not. The document upon which arbitration is predicated is not the allegedly forged document, but a document that the buyer admits signing.
The terms of the arbitration agreement that the buyer did sign are broad enough to cover the "claims, demands, disputes or controversies" alleged by him in his lawsuit. Stated differently, in order for the buyer to prove the allegations of his complaint, he will have to present evidence of claims, demands, disputes, or controversies that arose between him and the dealer or the dealer's agent "concerning any of the negotiations leading to the sale of the vehicle, [the] terms and provisions of the sale, [or] the performance or condition of the vehicle." In fact, the buyer, in his "statement of the case" in his brief states: "The allegations contained in Appellee's Complaint arise out of the purchase of a used automobile from the Appellant." (Emphasis added.) Did the buyer admit signing an agreement to arbitrate "all claims, demands, disputes or controversies" arising out of "the negotiations leading to the sale of the vehicle, [the] terms and provisions of the sale, [or] the performance or condition of the vehicle"? Of course he did. I believe that the trial judge and the main opinion have focused on the wrong issue in this case, as the Chief Justice points out in his dissent.
NOTES
[1] In their complaint, Barnes and Rogers allege that "the paperwork was done in [Barnes's] name, but [Gregory] was aware that the automobile was to belong to the Plaintiffs jointly." Only Barnes's name appears on the documents at issue in this case. Although Gregory states in its statement of facts that Barnes was the sole purchaser of the Hyundai, the parties raise no issue concerning ownership of the Hyundai. For these reasons, and for purposes of this opinion only, we will refer to Barnes and Rogers as the purchasers of the Hyundai.
[2] For $1,495, and subject to payment of a $25 deductible, the service agreement provided certain repairs for three months from purchase or 3,000 miles.