789 So.2d 842 (2001)
Ex parte DISCOUNT FOODS, INC.
(In re Discount Foods, Inc. v. Supervalu et al.)
1991127.
Supreme Court of Alabama.
January 12, 2001.
*843 Robert R. Riley, Jr., and Keith Jackson of Law Offices of Rob Riley, P.C., Birmingham, for petitioners.
*844 Jere F. White, Jr., and Robin H. Graves of Lightfoot, Franklin & White, L.L.C., Birmingham, for respondents Supervalu, Inc., and Moran Foods, Inc., d/b/a Save-A-Lot, Ltd.
Judge Malcolm B. Street, Jr., respondent, pro se.
PER CURIAM.
This is the second time this case has come before this Court. See Ex parte Discount Foods, Inc., 711 So.2d 992 (Ala. 1998) ("Discount Foods I"), for a full discussion of the facts and the procedural history. In Discount Foods I, a plurality of this Court ruled that the tort claims of Discount Foods, Inc., against Supervalu Company (identified in the pleadings as a Delaware corporation) and its subsidiary, Sav-A-Lot, Ltd., alleging interference with contractual and business relations, unfair competition, and violation of trade-secret and antitrust law, could not be arbitrated because the arbitration provision agreed to by Discount Foods and Supervalu in their "Retailers Agreement," although broad, could not be construed to encompass Discount Foods' intentionaltort claims. The "Retailer's Agreement" governed the supply of groceries and other inventory items furnished to Discount Foods; Discount Foods' claims were based on dealings that were separate and distinct from the dealings that gave rise to the signing of the "Retailer's Agreement" containing the arbitration provision. Those claims arose out of a transaction whereby Discount Foods sought to acquire a lease of commercial real estate from a third party. This Court issued its writ of mandamus directing the trial court to vacate its order granting the defendants' motion to compel arbitration and, instead, to enter an order denying the motion.[1]
Discount Foods later amended its complaint to state additional claims against Sav-A-Lot, based on allegations of negligent, wanton, or intentional disclosure of confidential information, and negligent, reckless or intentional misrepresentations. Discount Foods also stated additional claims against Sav-A-Lot and Supervalu, seeking damages for certain allegedly defamatory statements. The trial court, relying on certain opinions from this Court that were released after Discount Foods I, again concluded that the arbitration provision was broad enough to encompass all of Discount Foods' claims, and it entered an order granting the defendants' motion to arbitrate. Discount Foods again petitions this Court for mandamus relief. We grant the petition in part.
Whether an arbitration provision encompasses a party's claims is a matter of contract interpretation. That interpretation is guided by the intent of the parties, which, absent ambiguity in the arbitration provision, is evidenced by the plain language of the provision. Green Tree Fin. Corp. v. Shoemaker, 775 So.2d 149 (Ala. 2000). The arbitration provision at issue here states:
"Any controversy or claim arising between the parties, including, but not limited to, disputes relating to this [a]greement, shall be resolved by binding arbitration...."
*845 This provision is clear on its face, and it requires the parties to arbitrate "[a]ny controversy or claim" arising between them. The "controversy or claim" referred to includes, "but [is] not limited to," disputes relating to the contract containing the arbitration provision. Therefore, by contract, the parties are bound to arbitrate any controversy or claim between them, including a controversy or claim that does not relate to the contract containing the arbitration provision.[2] This action involves a controversy and claims between Discount Foods and the defendants. Accordingly, this Court must enforce the arbitration provision as it is written. See Allied-Bruce Terminix Cos. v. Dobson, 513 U.S. 265, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995), which substantially changed the arbitration law of this State by rendering unenforceable (insofar as it might relate to a predispute agreement to arbitrate appearing in a contract involving interstate commerce) Ala.Code 1975, § 8-1-41(3) ("The following obligations cannot be specifically enforced: ... An agreement to submit a controversy to arbitration[.]"). In Allied-Bruce Terminix, the United States Supreme Court held that the Federal Arbitration Act governs all contracts falling within Congress's power to regulate under the Commerce Clause. We have recognized that an arbitration provision must be enforced in Alabama to the extent enforcement is required by federal law. See Green Tree Fin. Corp. v. Shoemaker, supra, citing Allied-Bruce Terminix Cos. v. Dobson, 684 So.2d 102 (Ala.1995).
We note again that this Court's opinion in Discount Foods I was a plurality opinion. The precedential value of the reasoning in a plurality opinion is questionable at best. See Ex parte Achenbach, 783 So.2d 4 (Ala.2000). In any event, we have reexamined Discount Foods I, and we conclude that it was wrongly predicated on a wrongly decided plurality opinion in Carl Gregory Chrysler-Plymouth, Inc. v. Barnes, 700 So.2d 1358 (Ala.1997).[3]Discount Foods I supports the proposition that even a broad arbitration provision should not be enforced to require arbitration of a claim alleging an intentional tort that is not related to the underlying transaction that gave rise to the arbitration agreement. See Green Tree Fin. Corp. v. Shoemaker, supra, and Green Tree Fin. Corp. v. Vintson, 753 So.2d 497 (Ala.1999). However, after further considering Discount Foods I, we disapprove the rationale *846 of the plurality opinion in that casethat intentional torts unrelated to the underlying transaction that gave rise to the arbitration agreement can never be encompassed in a broad arbitration provision. We hold, instead, that the arbitration provision at issue here is clear and that it is broad enough to encompass all of Discount Foods' claims, at least with respect to the only other signatory to the arbitration provision, even those claims based on allegations of wrongful intentional conduct that does not relate to the contract containing the arbitration provision.[4]
However, the question of Sav-A-Lot's standing to enforce the arbitration provision is a different matter. The materials before us clearly indicate that Sav-A-Lot is not a signatory to the "Retailer Agreement" containing the arbitration provision and that it is not a party to that agreement. The arbitration provision states that "[a]ny controversy or claim between the parties ... shall be resolved by binding arbitration." (Emphasis added.) The "Retailer Agreement" specifically references only the signing partiesDiscount Foods and Supervalu; it does not encompass nonparties. See Ex parte Stamey, 776 So.2d 85 (Ala.2000).
Because Discount Foods has established a clear legal right to relief, it is entitled to the writ of mandamus. Isbell v. Southern Energy Homes, Inc., 708 So.2d 571 (Ala.1997). Pursuant to our mandamus standard of review, Discount Foods is entitled to a writ directing the trial court to vacate its order, but only insofar as that order compelled it to arbitrate its claims against Sav-A-Lot. To that extent, the writ shall issue. To the extent it seeks to vacate the order as to Supervalu, the petition is denied.
PETITION GRANTED IN PART AND DENIED IN PART, AND WRIT ISSUED.
*847 MADDOX, HOUSTON, SEE, LYONS, and BROWN, JJ., concur.
HOOPER, C.J., and JOHNSTONE and ENGLAND, JJ., concur in part and dissent in part.
HOOPER, Chief Justice (concurring in part and dissenting in part).
I concur to deny the petition insofar as it seeks a writ directing the trial court to vacate the order compelling arbitration of Discount Foods' claims against Supervalu. I respectfully dissent from the granting of the writ directing the trial court to vacate the order compelling arbitration of Discount Foods' claims against Sav-A-Lot. The parent-subsidiary relationship between Supervalu and Sav-A-Lot is sufficient to compel arbitration of Discount Foods' claims against Sav-A-Lot, in spite of the fact that Sav-A-Lot was not a signatory to the "Retailer Agreement."
JOHNSTONE, Justice (concurring in part and dissenting in part).
I concur to grant the writ to vacate the order compelling arbitration of Discount Foods' claims against Sav-A-Lot. I respectfully dissent from the denial of a writ to vacate the order compelling arbitration of Discount Foods' claims against Supervalu.
ENGLAND, Justice (concurring in part and dissenting in part).
I concur in the decision to grant the petition as to Sav-A-Lot. I dissent from the conclusion that the arbitration clause "is broad enough to encompass all of Discount Foods' claims, at least with respect to the only other signatory to the arbitration provision, even those claims based on allegations of wrongful intentional conduct that does not relate to the contract containing the arbitration provision." 789 So.2d 846.
NOTES
[1] The plurality opinion in Discount Foods I was written by Justice Kennedy, and it was concurred in by Justices Almon, Shores, and Cook. Justice Butts concurred in the result, without writing. Chief Justice Hooper, and Justices Maddox, Houston, and See dissented, concluding that the arbitration provision was broad enough to cover the controversy between the parties and that the writ of mandamus should have been denied. 711 So.2d at 994. Of the Justices who participated in the original decision, only Chief Justice Hooper and Justices Maddox, Houston, Cook, and See are presently on this Court.
[2] At least one of Discount Foods' claims appears to relate to the contract containing the arbitration provision. Discount Foods alleged in its complaint that the defendants had interfered with its lease negotiations by indicating to a potential lessor that they would provide financial support to a Discount Foods competitor, which, according to Discount Foods, was seeking to obtain, and ultimately was successful in obtaining, the lease and a Sav-A-Lot franchise. The contract containing the arbitration provision states that Discount Foods:

"3. Acknowledge[s] Supervalu's right to choose and select its customers and retailers and to enter into Retailer Agreements with other parties at Supervalu's sole choice and discretion, including but not limited to Supervalu's right to own, operate, finance, serve or supply a store in competition with [Discount Foods] at any location...."
This Court has held that where a contract contains a valid arbitration provision that applies to claims "arising out of or relating to" the contract, that provision has a broader application than an arbitration provision that refers only to claims "arising from" the contract. Resolution of Discount Foods' claim alleging interference with contractual relations would seem to require reference to the contractual provision quoted above. See Ex parte Cupps, 782 So.2d 772, 775 (Ala.2000).
[3] See the special writings of Chief Justice Hooper and Justices Maddox and Almon in Barnes, which demonstrate why the rationale of the plurality opinion in that case was wrong. See 700 So.2d at 1361-63.
[4] This Court is not required under the doctrine of "law of the case" to adhere to the decision in Discount Foods I. Generally, the law-of-the-case doctrine provides that when a court decides upon a rule of law, that rule should continue to govern the same issues in subsequent stages in the same case. The purpose of the doctrine is to bring an end to litigation by foreclosing the possibility of repeatedly litigating an issue already decided. See Murphy v. FDIC, 208 F.3d 959 (11th Cir.2000); see, also, Blumberg v. Touche Ross & Co., 514 So.2d 922 (Ala.1987). However, the law-of-the case doctrine does not in all circumstances require rigid adherence to rulings made at an earlier stage of a case. The doctrine directs a court's discretion; it does not limit a court's power. The law-of-the-case doctrine is one of practice or court policy, not of inflexible law, and it will be disregarded when compelling circumstances call for the redetermination of a point of law on a prior appeal; and this is particularly true when the court is convinced that its prior decision is clearly erroneous or where an intervening or contemporaneous change in the law has occurred by an overruling of former decisions or when such a change has occurred by new precedent established by controlling authority. See State v. Whirley, 530 So.2d 861 (Ala.Crim.App.1987), rev'd on other grounds, 530 So.2d 865 (Ala.1988); Callahan v. State, 767 So.2d 380 (Ala.Crim. App.1999); Murphy v. FDIC, supra; United States v. Escobar-Urrego, 110 F.3d 1556 (11th Cir.1997); Heathcoat v. Potts, 905 F.2d 367 (11th Cir.1990). The decision in Discount Foods I failed to give effect to the parties' contractual intent, as evidenced by the plain language of the arbitration provision; it, therefore, was clearly erroneous. In fact, this Court sub silentio disapproved the rationale of Discount Foods I in Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Kirton, 719 So.2d 201 (Ala.1998), which was released approximately four months after the opinion in Discount Foods I. In Kirton, this Court specifically noted: "[W]e conclude that the language of the arbitration provision in the 1995 customer agreement entered into between Merrill Lynch and Ms. Kirton is sufficiently broad to include any and all controversies between them, regardless of the kind of controversy or the date on which the controversy occurred." 719 So.2d at 204 (some emphasis original; some emphasis added).