The defendants, Jim Walter Homes, Inc. ("JWH"), Mid-State Homes, Inc., Walter Industries, Inc., and Mark Stevens (hereinafter collectively referred to as the "defendants") appeal the trial court's denial of their motion to compel arbitration.[1] We affirm.
Adam McMillan and Frieda McMillan contracted with the defendants for the construction of a home. From the record before us, it appears that the McMillans entered successively into five separate building contracts and admittedly signed separate arbitration agreements associated with the first four contracts. Paragraph 9 of each building contract stated:
 "This instrument and the other instruments signed in connection with this transaction (including a Limited Warranty) contain the price and all the terms and conditions agreed upon by Buyer and Seller, and no statement, representation, or promise not set forth in this contract, or any of the other said instruments, has been made to induce either party to enter into this transaction. IN CONNECTION WITH THE FOREGOING, BUYER ACKNOWLEDGES HAVING READ, UNDERSTOOD, AND ACCEPTED THE ARBITRATION AGREEMENT SET FORTH IN EXHIBIT D ATTACHED HERETO AND INCORPORATED BY THIS REFERENCE. ___ (BUYER'S INITIALS)[.]" *Page 1083 
The first building contract, and the associated arbitration agreement, were entered into and signed on August 12, 1997. That contract was for the defendants to complete construction on a partially built home for the McMillans. On September 20, 1997, a second building contract and arbitration agreement were entered into and signed to correct errors contained in the first contract. On October 28, 1997, a third contract and agreement were entered into and signed to correct an error and to change the model of home that was listed on the second contract to a "President" model. On August 11, 1998, a fourth contract and agreement were entered into and signed, again to change the model of the home, from a "President" model to a "Foxborough" model. On October 3, 1998, a fifth contract was entered into, which the affidavit of Jim Heinzen, JWH's property manager for the Alabama region, asserts "contained a revision regarding the insulation and wallboard options for the Foxborough model." The basis of the McMillans' claims in this case arises from this final building contract.
On June 21, 2000, the McMillans sued, alleging fraudulent misrepresentation; suppression and concealment; innocent or mistaken misrepresentation and concealment; breach of contract; breach of warranty; breach of the warranty of habitability; negligent and/or wanton hiring, training, and supervision; and negligence. All allegations related to their dealings with the defendants regarding the defendants' construction of their home and the McMillans' purchase of the home. The count alleging suppression and concealment specifically stated:
 "Defendant, Jim Walter, with superior knowledge, fraudulently concealed that Plaintiffs' house would have numerous problems during construction, including:
 "(a) [an] improper foundation, [which] should have been laid on level land and should have had basement, there was no basement;
 "(b) Defendant [Mark] Steven[s] promised to sell the Plaintiffs a more expensive house for the same price of the original house, including free refrigerator, stove, dishwasher and washer/dryer;
 "(c) Defendants later recanted the free appliances and said that was not possible because they ha[d] already gone over budget by laying [a] new foundation;
 "(d) Defendant told Plaintiff[s] they would have to re-sign papers for [a] new house to be constructed;
 "(e) Plaintiffs signed new papers on October 3, 1998; the Plaintiffs refused to sign a new Arbitration Agreement for this house;
 "(f) Agents for Jim Walter Homes, Inc.[,] forged a date on an old Arbitration Agreement signed by the Plaintiffs. . . ."
(Emphasis added.)
On August 9, 2000, Jim Walter Homes, Inc., Mid-State Homes, Inc., and Mark Stevens, together, filed a motion to compel the plaintiffs to arbitrate their claims. On August, 25, 2000, the defendant Walter Industries, Inc., filed a motion to compel arbitration that incorporated by reference all of the arguments made in the motion filed by the other three defendants. The motions to compel carried as an attachment the affidavit of JWH's property manager for the Alabama region, to which were attached the five separate building contracts, the four arbitration agreements the plaintiffs admitted signing, and a fifth arbitration agreement purportedly signed by the plaintiffs.
In opposition to the defendants' motions to compel arbitration, the McMillans filed a "Response," in which they argued that their claims were not arbitrable because a valid arbitration agreement did not exist. They asserted that they had not initialed *Page 1084 
the arbitration agreement contained in Paragraph 9 of the October 3, 1998, building contract (the fifth contract), and they denied that they had signed the separate arbitration agreement bearing that same date. They also argued that because the October 3, 1998, contract contained a merger clause, it superseded the previous four building contracts and arbitration agreements they had signed. They attached to their response their own separate affidavits, in which they stated that they had spoken to an attorney before signing the October 3, 1998, building contract, that he had advised them not to sign arbitration agreements, and that consequently they had specifically refused to initial Paragraph 9 of that building contract or to sign the arbitration agreement. They both asserted that someone else had initialed Paragraph 9. Frieda McMillan also stated in her affidavit that the initials purported to be hers in Paragraph 9 of the October 3, 1998, contract were not her initials. That paragraph contained the initials "FRM." She stated that she had no middle initial and when she did sign with a middle initial, it was "T," the initial letter of her maiden surname. A review of the first four sets of contract documents contained in the record confirms that in those documents she generally used only the initials "FM" and that the only middle initial used by her, and only in her signature in some instances, was "T." Accordingly, the trial judge could well have found the "FRM" initials purportedly used by her to be highly suspect.
On August 25, 2000, the trial court denied the defendants' motions to compel arbitration, by an order that stated, in pertinent part:
 "As noted, the case came before the Court for hearing and the Court does not have before it sufficient proof to grant said arbitration. Therefore, said Motions for arbitration are overruled and denied.
 "It should be noted that from the matters presented to this Court, the plaintiffs contend that the purported contract upon which the defendants rely is not the contract that the plaintiffs signed. From the matters before this Court, no copy of the contract was given to the plaintiffs by the defendants until some time after the signing, and it was taken back to the office and pages were substituted containing, among other things, the arbitration provision. In addition thereto, forgery is a serious issue in this case.
 "The Court has granted the movants an opportunity to submit evidence, and they have declined to submit evidence and asked the Court to rule on what the Court has before it; and accordingly, the Court overrules and denies the Motions to Compel Arbitration and Stay Proceedings Pending Arbitration filed by the defendants."
Our standard of review applicable to an order denying a motion to compel arbitration is settled. "In reviewing a trial court's refusal to compel arbitration, this Court's review is de novo." Kenworth of Dothan,Inc. v. Bruner-Wells Trucking, Inc., 745 So.2d 271, 273 (Ala. 1999). Likewise, "[w]hen a trial judge's ruling is not based substantially on testimony presented live to the trial judge, review of factual issues isde novo." Rogers Foundation Repair, Inc. v. Powell, 748 So.2d 869, 871
(Ala. 1999). While the McMillans otherwise argue that the ore tenus presumption of correctness should apply to this case, we disagree. Nothing in the trial court's order suggests that the court heard ore tenus testimony at its hearing on the defendants' motions to compel arbitration. The order states only that "Present [were] the attorneys for the respective parties." *Page 1085 
This Court has described the burdens imposed on the movant and the nonmovant in regard to a motion to compel arbitration:
 "A motion to compel arbitration is analogous to a motion for a summary judgment. The party seeking to compel arbitration has the burden of proving the existence of a contract calling for arbitration and proving that that contract involves a transaction affecting interstate commerce. Once such a prima facie showing has been made, the burden shifts to the party opposing arbitration to present some evidence indicating that there is no arbitration agreement subject to specific enforcement under the FAA. If the party opposing arbitration presents sufficient evidence to create a fact question as to the existence of a valid arbitration agreement, then the issue must be resolved by the trial court or by a jury, if one is requested."
Ex parte Caver, 742 So.2d 168, 172 n. 4 (Ala. 1999) (citation omitted).
It is apparent that the defendants attempted to meet their initial burden by attaching the affidavit of Jim Heinzen to their motion to compel arbitration. In response, the McMillans provided their own affidavits to create a question of fact concerning the existence of a contract calling for arbitration, a question for the trial court to resolve. The McMillans argue in their brief that there is no enforceable agreement to arbitrate because they did not initial Paragraph 9 of the October 3, 1998, building contract and did not sign a separate arbitration agreement on that date. They state that apparently an agent of the defendants forged their initials to Paragraph 9 and otherwise used their signatures from a previous arbitration agreement they had signed and changed the date on that agreement to read "October 3, 1998."
The defendants argue that there is an enforceable arbitration agreement that is evidenced by the signed building contract and arbitration agreement. They point out that the building contract the McMillans admittedly signed on October 3, 1998, contained a block-letter statement above the signature blank, reading: "The Buyer Acknowledges That Buyer Has Received A Copy Of This Agreement And That Before Signing The Same, The Contract Contained The Entire Terms And All Blank Spaces Had Been Filled In Prior To The Signing Of The Same." Alternatively, they argue, among other things, that the McMillans cannot rely on the October 3, 1998, contract for their breach-of-contract claim and, at the same time, disclaim the arbitration agreement. They cite Homes of Legend, Inc. v.Fields, 751 So.2d 1228, 1231 (Ala. 1999) (See, J., dissenting), for the proposition that "a party cannot both claim the benefits of a contract and avoid the burden of an arbitration provision in that [contract]." The McMillans counter by stating that they are not attempting to selectively enforce the provisions of the building contract that are favorable to them, but, rather, that they are attempting simply to enforce the entire contract as it was constituted when they executed it. The defendants agree with the plaintiffs that the October 3, 1998, contract alone is determinative of the arbitration issue, and the defendants do not rely upon any of the previous building contracts or arbitration agreements.
This Court has stated:
 "As a general rule, the FAA preempts Alabama law and makes an arbitration agreement enforceable if the agreement appears in a contract that evidences a transaction involving interstate commerce. See Crown Pontiac, Inc. v. McCarrell, 695 So.2d 615, 617 (Ala. 1997). In order for the FAA to apply, and *Page 1086 
preemption to occur, (1) there must be a valid, written arbitration agreement and (2) the contract in which the arbitration agreement appears must relate to a transaction involving interstate commerce. See Prudential Securities, Inc. v. Micro-Fab, Inc., 689 So.2d 829, 832 (Ala. 1997)."
Southern Energy Homes, Inc. v. Harcus, 754 So.2d 622, 625 (Ala. 1999). InHarcus, we further stated:
 "`This Court has clearly and consistently held that a party cannot be required to submit to arbitration any dispute he has not agreed to submit.' Ex parte Stallings Sons, Inc., 670 So.2d 861, 862 (Ala. 1995) (internal quotation marks omitted [in Harcus]). In determining whether the parties agreed to arbitrate a dispute, this Court applies general Alabama contract-law principles. See Quality Truck Auto Sales Inc. v. Yassine, 730 So.2d 1164, 1167-68 (Ala. 1999). . . ."
Id. at 626.
We therefore first consider whether the trial court erred in holding that the defendants' proof was insufficient for the court to find an enforceable agreement to arbitrate between the McMillans and the defendants. Under similar allegations of forgery, we have stated:
 "The United States Supreme Court has stated that `courts should remain attuned to well-supported claims that the agreement to arbitrate resulted from the sort of fraud . . . that would provide grounds "for the revocation of any contract."' Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 627, 105 S.Ct. 3346, 3354, 87 L.Ed.2d 444 (1985). While this is true, courts should be even more attuned to claims that the agreement from which arbitration allegedly stems was, in fact, a forged document, which would not even provide the basis from which a court could find a valid contract to be revoked. . . ."
Carl Gregory Chrysler-Plymouth, Inc. v. Barnes, 700 So.2d 1358, 1360-61
(Ala. 1997). The trial court found that the October 3, 1998, contract "was taken back to the office and pages were substituted containing, among other things, the arbitration provision," going on to observe that "forgery is a serious issue in this case." While no presumption of correctness attaches to the trial court's findings in this case, "[w]e review an order granting or denying a motion to compel arbitration under an abuse-of-discretion standard." Ex parte Parker, 730 So.2d 168, 170
(Ala. 1999). Given the sparse support the defendants provided for their motions to compel arbitration, and the McMillans' affidavits stating that on October 3, 1998, they specifically refused to sign the arbitration provision in Paragraph 9 of the fifth building contract, we conclude that the trial court did not abuse its discretion in denying the defendants' motions to compel arbitration. Accordingly, the order of the trial court is affirmed.
AFFIRMED.
Moore, C.J., and Brown and Stuart, JJ., concur.
See, J., concurs in the result.
[1] George Smaha was also named as a defendant in this lawsuit, but he did not answer and did not move for arbitration, so he is not involved in this appeal. Thus, this appeal is limited to the trial court's denial of the motions to compel arbitration filed by the other four defendants. *Page 1087