45 So.3d 350 (2010)
Hajo DREES
v.
Kile T. TURNER, Richard L. Vincent, and Sara Turner.
2080742.
Court of Civil Appeals of Alabama.
February 26, 2010.
*352 Angela Turner, Drees, Birmingham, for appellant.
Lisa W. Borden of Baker, Donelson, Bearman, Caldwell & Berkowitz, P.C., Birmingham; and Thomas A. Kendrick of Norman, Wood, Kendrick & Turner, Birmingham, for appellees Kile Turner and Sara Turner.
Lee R. Benton and Brenton K. Morris of Benton & Centeno, LLP, Birmingham, for appellee Richard Vincent.

On Application for Rehearing
MOORE, Judge.
This court's opinion of December 18, 2009, is withdrawn, and the following is substituted therefor.
This is the second time these parties have been before this court. See Drees v. Turner, 10 So.3d 601 (Ala.Civ.App.2008). In the first appeal, Hajo Drees argued to this court that the Jefferson Circuit Court had erred in entering orders dismissing his action against Kile T. Turner, Richard L. Vincent, and Sara Turner ("the defendants") based on the doctrine of judicial immunity. This court did not address the substance of that argument but, instead, concluded that the trial court had impermissibly converted the defendants' motions to dismiss to motions for a summary judgment by considering matters outside the pleadings. 10 So.3d at 602-03. Relying on Poston v. Smith, 666 So.2d 833 (Ala.Civ. App.1995), this court held that the trial court should have given the parties an opportunity to submit evidence outside the pleadings to bolster their respective positions, and we reversed the orders of dismissal and remanded "the cause for further proceedings consistent with this [court's] opinion." 10 So.3d at 603.
On remand, the trial court ordered the parties to attend a status conference, at which the parties were to apprise the trial court of "the path this litigation will take in consonance [with the Court of Civil Appeals' opinion]." Following that conference, the parties submitted briefs to the trial court regarding their interpretation of this court's mandate. On March 20, 2009, the trial court entered a judgment in which it explained that it had reviewed material outside the pleadings, which Drees had submitted in response to the defendants' motions to dismiss, but that it had done so only because it "was necessary to read everything to determine what was included in [Drees's] Complaint and what was not." The trial court stated that it had not based its initial decision to dismiss the action on that material. The trial court acknowledged that it had quoted a portion of that material in its original orders granting the *353 motions to dismiss, but, it stated, the language was merely dicta and it had not considered the language in its decisionmaking process. The trial court thereafter reentered a judgment dismissing the action without affording Drees any opportunity to conduct discovery or to submit additional evidence in support of his position that the case should be considered on summary judgment. Drees appealed to the Alabama Supreme Court; that court determined that the appeal fell within this court's appellate jurisdiction and, accordingly, transferred the appeal to this court.
In this appeal, Drees initially argues that the trial court erred in failing to follow this court's mandate.
"`It is the duty of the trial court, on remand, to comply strictly with the mandate of the appellate court according to its true intent and meaning, as determined by the directions given by the reviewing court. No judgment other than that directed or permitted by the reviewing court may be entered.... The appellate court's decision is final as to all matters before it, becomes the law of the case, and must be executed according to the mandate....'"
Ex parte Alabama Power Co., 431 So.2d 151, 155 (Ala.1983) (quoting 5 Am.Jur.2d Appeal and Error § 991 (1962)).
Pursuant to Alabama Power, our conclusion in the first appeal that the trial court had considered evidence outside the pleadings became the law of the case.
"`"Under the doctrine of the `law of the case,' whatever is once established between the same parties in the same case continues to be the law of that case, whether or not correct on general principles, so long as the facts on which the decision was predicated continue to be the facts of the case."' Stockton v. CKPD Dev. Co., LLC, 982 So.2d 1061, 1066 (Ala.2007) (quoting Blumberg v. Touche Ross & Co., 514 So.2d 922, 924 (Ala.1987)). `[U]nless the facts upon which the holding of the Court of Civil Appeals was predicated have changed, the holding of the Court of Civil Appeals is the law of the case.' Stockton, 982 So.2d at 1066-67."
M.M. v. D.P., 37 So.3d 179, 182 (Ala.Civ. App.2009) (emphasis added). In Ex parte Discount Foods, Inc., 789 So.2d 842 (Ala. 2001), the supreme court explained the law-of-the-case doctrine as follows:
"The purpose of the doctrine is to bring an end to litigation by foreclosing the possibility of repeatedly litigating an issue already decided.... However, the law-of-the-case doctrine does not in all circumstances require rigid adherence to rulings made at an earlier stage of a case. The doctrine directs a court's discretion; it does not limit a court's power. The law-of-the-case doctrine is one of practice or court policy, not of inflexible law...."
789 So.2d at 846 n. 4.
Although this court held in the first appeal that the trial court had considered evidence outside the pleadings in rendering its orders of dismissal, the facts upon which that holding was based have now changed. The record now contains information directly from the trial court in which the trial court explains that it did not consider evidence outside the pleadings in ruling on the motions to dismiss. The whole purpose of the reversal was to assure that the court had followed proper procedures before Drees's case was summarily disposed of. That purpose would have been served by allowing Drees an opportunity to present additional evidence had the motions to dismiss been converted to motions for a summary judgment; however, that purpose has now been equally served by the trial court's ruling on the *354 motions to dismiss without its considering any material outside the pleadings. Accordingly, based on the particular facts adduced on remand, we hold that the law-of-the-case doctrine did not prevent the trial court from reentering a judgment dismissing the case.
Drees next argues that the trial court erred in dismissing the action. General rules of pleading require only that a complainant make "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 8(a)(1), Ala. R. Civ. P. Drees, however, elected to file an 11-page complaint with reference to 15 exhibits totaling 77 pages. In the complaint, which was filed on December 13, 2007, Drees made the following allegations: Angela Turner had been involved in a custody-modification dispute with Kile Turner, her former husband and a licensed attorney, since November 2005. During the custody proceedings, which we will refer to as "the Turner custody case," Drees married Angela. Subsequently, Kile, Sara Turner, Kile's new wife, and Richard Vincent, Kile's attorney in the Turner custody case, separately contacted Denita Steinbach Drees, Drees's former wife, and/or Denita's attorney in an effort to gain information regarding Drees and to interfere with Drees's custody case against Denita. Through those efforts, Vincent obtained a certified copy of a protection-from-abuse order ("the PFA order") that had been entered by a Nebraska court in 2004 against Drees; the PFA order was obtained by Denita and was in force until June 2005, when it expired without having been violated. Drees maintains that Denita had made groundless accusations of abuse against him in order to obtain the PFA order; that she had since been committed to a psychiatric facility; and that, despite the defendants' efforts to obstruct his custody case, he eventually gained custody of the couple's three children, proving that the abuse allegations were false.
On April 2, 2007, Vincent, on behalf of Kile, filed a motion in the Turner custody case asserting that Drees had been convicted of domestic violence upon Denita. During the trial of the Turner custody case in May 2007, Vincent stated on four separate occasions that Drees had been convicted of having committed domestic violence not only against Denita, but also against one of Drees's children. Kile also stated under oath that Drees had been convicted of domestic violence against Denita and against one of Drees's children. Drees asserts that, as trained and licensed attorneys, both Kile and Vincent knew that Drees had never been convicted of domestic violence. Drees maintains that Kile's and Vincent's statements were made in order for Kile to gain custody of Kile and Angela's children, to gain child support from Angela, and to avoid any child-support obligations to Angela. According to Drees, Vincent benefited from his statements by receiving over $50,000 in attorney's fees from Kile and Kile's mother.
On June 14, 2007, the judge presiding over the Turner custody case entered a judgment transferring custody of the Turner children to Kile. That judgment contained two separate, but related, findings that Drees had been convicted of domestic violence against Denita and against one of Drees's children. Angela, through her attorney, alerted the trial judge during the trial and in posttrial motions that, in fact, Drees had not been convicted of domestic violence. According to Drees, the trial judge did not grant any motion filed by Angela to correct the judgment. Subsequently, public documents recording the statements made by Kile and Vincent were "freely disseminated in the community," including the school two of Drees's children attended.
*355 In October 2007, Drees filed a "Third Party Motion to Expunge False Information from the Record" in the Turner custody case. At the hearing on that motion, Drees, through his attorney, represented that he had never been convicted of domestic violence and requested that Kile and Vincent produce any evidence to support their contention that he had been. Vincent replied, "Well, the record speaks for itself." The judge subsequently amended the Turner custody-modification judgment to remove any finding that Drees had been convicted of domestic violence and to insert a finding that only the PFA order had been entered against Drees. Neither Kile nor Vincent ever retracted their statements in court or to "the community," ever apologized to Drees, or ever showed any remorse.
In count one of his complaint, Drees alleged that Kile and Vincent had invaded his privacy by "wrongfully intruding into his solicitude and seclusion of his private affairs and concerns in a manner that clearly and publicly violates the ordinary decencies of human behavior and putting [Drees] in a false light in his community and profession." In count two, Drees alleged that Kile and Vincent had committed "abuse of process on his person when they knowingly, intentionally and deliberately orchestrated a guilty conviction for domestic violence that they knew or in the exercise of reasonable care, should have known, and was false." In count three, Drees averred that Kile and Vincent had "intended to inflict emotional distress on [Drees] when they made him guilty and convicted him of an erroneous and false felony crime against his ex-wife and one of his children." In count four, Drees asserted that Kile and Vincent had acted "with such extreme and outrageous misconduct when they orchestrated, manufactured and otherwise falsely stated that [Drees] was guilty and convicted of the felony crime of domestic violence against his ex-wife and one of his children." Drees claimed that the statements and actions of Kile and Vincent cost him over $150,000 in lost billable hours, threatened his current employment, impaired his ability to obtain employment, strained his relationship with Angela and his three children, caused him great mental anguish, and forced him to incur over $9,490 in legal fees and costs. Drees demanded compensatory and punitive damages in an unstated amount to be determined by a jury.
In his amended complaint, filed on January 4, 2008, Drees added Sara as a defendant. After adopting all the factual allegations and claims asserted in the original complaint, Drees made the following additional allegations: Sara is a licensed practicing attorney. Sara had "aggressively" contacted Denita, who Sara knew had psychiatric problems, over 15 times since the spring of 2006 in order to obtain detrimental information about Drees that could be used to support Kile's petition in the Turner custody case. Those contacts by Sara occurred during Drees's own custody case against Denita; they caused Denita great mental distress that exacerbated her psychiatric problems, which subsequently prevented Denita from having unsupervised visitation with the Dreeses' children for over six months; and they interfered with the Dreeses' custody proceedings. Kile used the information Sara had obtained to threaten Drees in an effort to gain Drees's assistance with Kile's custody petition. Sara, in an effort to place Drees in a false light before his family, his friends, and the community, and to influence the outcome of the Turner custody case, stated "to public and private persons in person and in documents" that Drees had been convicted of domestic violence against Denita and against one of Drees's children. On November 21, 2007, Drees sent Sara a letter *356 advising her that he considered her statements and conduct actionable and advising Sara of his intent to file a civil action against her and to initiate a complaint with the Alabama State Bar seeking the termination of her license to practice law unless she or her attorney contacted him "to discuss how this wrong can be righted and the damage repaired." Sara responded through counsel to Angela's attorney, requesting that Drees cease and desist any communication with Sara. Although Angela's attorney did not represent Drees, the attorney charged Drees for her time spent in relaying that information. On November 30, 2007, Sara, in an effort to intimidate, harass, and silence Drees, "abused the judicial system" by filing a nonparty motion for contempt against Drees in the Turner custody case despite knowing that Drees was not a party to that action and, as Drees asserts, that that court had no jurisdiction over Drees.
"On review of a judgment of dismissal, the judgment is not entitled to a presumption of correctness. Allen v. Johnny Baker Hauling, Inc., 545 So.2d 771, 772 (Ala.Civ.App.1989). The appropriate standard of review is whether the plaintiff could prove any set of circumstances that would entitle the plaintiff to relief. Rule 12(b)(6), Ala. R. Civ. P.; Raley v. Citibanc of Alabama/Andalusia, 474 So.2d 640, 641 (Ala.1985); Hill v. Falletta, 589 So.2d 746 (Ala.Civ.App. 1991). In reviewing a dismissal, this Court does not consider whether the plaintiff will ultimately prevail, but only whether the plaintiff may possibly prevail. Fontenot v. Bramlett, 470 So.2d 669, 671 (Ala.1985); Rice v. United Ins. Co. of America, 465 So.2d 1100, 1101 (Ala.1984). A dismissal is proper only when it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief. Garrett v. Hadden, 495 So.2d 616, 617 (Ala.1986); Hill v. Kraft, Inc., 496 So.2d 768, 769 (Ala. 1986). A dismissal is different from a summary judgment, and more difficult to obtain than a summary judgment. To get a summary judgment, the movant must show that there is no genuine issue of material fact and that the movant is entitled to a judgment as a matter of law. Rule 56(c), Ala. R. Civ. P.; Bussey v. John Deere Co., 531 So.2d 860 (Ala. 1988)."
Green v. Nemish, 652 So.2d 243, 244 (Ala. 1994). Further,
"`[t]he well-understood position of an appellate court reviewing the grant of a motion to dismiss is, taking the allegations of the complaint most strongly in favor of the pleader, to determine whether the plaintiff could prove any set of facts in support of his claim which would entitle him to relief. Rule 12, [Ala. R. Civ. P.], and commentary.'
"Jones v. Lee County Commission, 394 So.2d 928, 930 (Ala.1981) (emphasis added)."
Holway v. Wanschek, 690 So.2d 429, 431 (Ala.Civ.App. 1997).
Construing the allegations in the original complaint and the amended complaint most strongly in favor of Drees, we find that Drees premises his action against the defendants on (1) the defendants' having contacted his former wife and/or her attorney in order to gather detrimental information about Drees that could be used to advance Kile's petition in the Turner custody case, (2) Kile's and Vincent's having misrepresented to the judge in the Turner custody case on multiple occasions that Drees had been convicted of domestic violence against his former wife and against one of Drees's children, (3) Kile's and Vincent's having convinced the judge in the *357 Turner custody case to include a finding in its final judgment that Drees had been convicted of domestic violence, as they had misrepresented to the court, (4) the defendants' having disseminated public documents to Drees's "community" containing Kile's and Vincent's misrepresentations, (5) Sara's having made statements outside judicial proceedings that Drees had been convicted of domestic violence against his former wife and against one of Drees's children, and (5) Sara's having filed a nonparty contempt motion against Drees in the Turner custody case.
The trial court dismissed the action. The trial court reasoned that most of Drees's claims arose from "absolutely privileged" statements made in conjunction with judicial proceedings. See Walker v. Majors, 496 So.2d 726 (Ala.1986). As to those claims based on conduct or statements occurring outside the judicial proceedings, the trial court concluded that Drees had failed to allege sufficient facts to state actionable claims of invasion of privacy, abuse of process, or the tort of outrageous conduct/intentional infliction of emotional distress. See Archie v. Enterprise Hosp. & Nursing Home, 508 So.2d 693, 694-95 (Ala. 1987) (holding that a claim alleging intentional infliction of emotional distress and a claim alleging outrageous conduct actually state the same cause of action).
In his "statement of issues," contained in his principal appellate brief, Drees lists the following four issues:
"1. Does judicial proceeding immunity protect lawyers and their clients who lie in court and manufacture false evidence so as to win their cases?
"2. Does falsely convicting someone of a felony crime that he has never committed and filing a contempt action against him when he seeks to correct said false conviction constitute abuse of process and invasion of privacy sufficient to award damages?
"3. Does the intentional act of disseminating false information regarding a person to third parties outside of a court proceeding constitute portraying that person in a false light?
"4. Do the intentional acts of interfering with a nonparty to include contacting their ex-spouse, contacting their children's school personnel, invading their private finances and their place of employment sufficient [sic] to constitute intentional infliction of emotional distress as well as the tort of outrage when committed by three licensed attorneys?"
However, Drees actually argues only that the absolute privilege does not shield Kile and Vincent from civil liability for intentionally and maliciously misrepresenting to the judge in the Turner custody case that Drees had been convicted of domestic violence and does not protect Sara for using her superior legal knowledge to harass Drees by filing a frivolous contempt motion in the court presiding over the Turner custody case. Drees does not argue that the trial court erred in dismissing any claims based on the defendants' allegedly contacting his former wife in preparation for the Turner custody case, allegedly convincing the judge in the Turner custody case to include their alleged misrepresentations in his final judgment, and allegedly disseminating those alleged misrepresentations to third parties through documents and Sara's statements. Hence, we conclude that Drees has waived any argument that the trial court erred in dismissing those claims, and we will not discuss those claims further. See Rogers & Willard, Inc. v. Harwood, 999 So.2d 912, 923 (Ala. Civ.App.2007) ("This court will not consider on appeal issues that are not properly presented and argued in brief.").
*358 We reject Drees's argument that the trial court erred in dismissing the claim against Sara arising out her filing a contempt motion against Drees. Drees argues only that Sara, as a licensed and practicing attorney, should not be immune from suit for filing a pleading designed solely to intimidate or harass him. However, the trial court did not dismiss that claim based on immunity. Instead, the trial court dismissed that claim because it determined that the factual allegations contained in the amended complaint did not amount to abuse of process. See Preskitt v. Lyons, 865 So.2d 424, 430 (Ala. 2003) ("This Court has held that in order to prove the tort of abuse of process, a plaintiff must prove: `"(1) the existence of an ulterior purpose; 2) a wrongful use of process, and 3) malice."'" (quoting Willis v. Parker, 814 So.2d 857, 865 (Ala.2001), quoting in turn C.C. & J., Inc. v. Hagood, 711 So.2d 947, 950 (Ala.1998))). On appeal, Drees makes no argument that the trial court erred in that respect or that he actually pleaded sufficient facts to state a claim of abuse of process. Drees also makes no argument that the claim could be construed so as to state any other cognizable cause of action.
The trial court also correctly dismissed those claims arising out Kile's and Vincent's alleged misrepresentations made in the course of the Turner custody case. Pertinent statements made in the course of judicial proceedings are absolutely privileged. O'Barr v. Feist, 292 Ala. 440, 445-46, 296 So.2d 152, 156-57 (1974). In this case, the statements imputed to Kile and Vincent all concern a matter pertinent to a child-custody proceeding, namely, the conviction of domestic violence by a potential custodian. See Ala.Code 1975, § 30-3-131 (creating rebuttable presumption that it is against the best interests of a child to be placed into custody of perpetrator of domestic violence). Absolutely privileged statements, no matter how false or malicious, cannot be made the basis of civil liability. O'Barr, 292 Ala. at 445, 296 So.2d at 156; see also Walker v. Majors, 496 So.2d 726 (Ala.1986). That rule applies equally to claims other than those based on defamation. See Butler v. Town of Argo, 871 So.2d 1, 12-13 (Ala.2003) (holding that absolute legislative privilege extends to invasion-of-privacy claims); see also O'Barr, 292 Ala. at 445, 296 So.2d at 156 (defining "an absolutely privileged communication" as "`one in respect of which, by reason of the occasion on which, or the matter in reference to which, it is made, no remedy can be had in a civil action'" (quoting 50 Am.Jur.2d Libel & Slander § 193, p. 696) (emphasis added)). Even assuming, as Drees has alleged, that Kile and Vincent willfully and maliciously misrepresented that Drees had been convicted of domestic violence in order to place Drees in a false light and to improperly influence the outcome of the Turner custody case, Drees cannot recover civil damages against them. Hence, Drees has failed to state any claim upon which relief can be granted.
In his brief to this court, Drees basically argues that, by applying the absolute privilege to statements made in judicial proceedings, the law fosters perjury and rewards manipulative litigants. However, in formulating the privilege, our supreme court has recognized that
"`[t]he privilege is a matter of public policy, and is not intended so much for the protection of those engaged in the public service and in the enactment and administration of law, as for the promotion of the public welfare, the purpose being that members of the legislature, judges of courts, jurors, lawyers, and witnesses may speak their minds freely and exercise their respective functions without incurring the risk of a criminal *359 prosecution or an action for the recovery of damages.'"
O'Barr, 292 Ala. at 445, 296 So.2d at 156 (quoting 50 Am.Jur.2d Libel and Slander § 193, p. 696). It cannot be discounted that perjury and fabricated evidence should not be encouraged, but the law holds that those evils "`"`can and should be exposed at trial, and the legal system encourages and expects litigants to root them out as early as possible....'"'" E.S.R. v. Madison County Dep't of Human Res., 11 So.3d 227, 236 (Ala.Civ.App. 2008) (quoting Hall v. Hall, 587 So.2d 1198, 1201 (Ala.1991), quoting in turn Travelers Indemnity Co. v. Gore, 761 F.2d 1549, 1552 (11th Cir.1985), quoting in turn Great Coastal Express v. International Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of America, 675 F.2d 1349, 1357 (4th Cir.1982)). Irrespective of Drees's arguments, the simple fact remains that, under Alabama law, a claim for civil damages may not rest on pertinent statements made in the course of judicial proceedings.
Drees also argues that the absolute privilege does not shield a party from criminal responsibility for perjured testimony or fabricated evidence. We need not address that argument. Drees is not a prosecutor seeking to hold the defendants criminally responsible for their alleged perjury or criminal conspiracy to commit perjury; he is a private individual seeking civil damages based on allegedly false and malicious statements made in the context of a child-custody case, which Alabama law does not allow. His arguments in this vein are totally unavailing.
Drees finally argues that Kile and Vincent, both alleged to be licensed attorneys, cannot be immune from civil liability for allegedly lying under oath and misrepresenting the evidence. In support of that argument, Drees relies primarily upon the United States Supreme Court's statement in Scheuer v. Rhodes, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), overruled on other grounds, Harlow v. Fitzgerald, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), that,
"when a state officer acts under a state law in a manner violative of the Federal Constitution, he
"`comes into conflict with the superior authority of that Constitution, and he is in that case stripped of his official or representative character and is subjected in his person to the consequences of his individual conduct. The State has no power to impart to him any immunity from responsibility to the supreme authority of the United States.'"
416 U.S. at 237, 94 S.Ct. 1683 (quoting Ex parte Young, 209 U.S. 123, 159-60, 28 S.Ct. 441, 52 L.Ed. 714 (1908)). Drees essentially argues that, based on Scheuer, licensed attorneys, as officers of the court, who intentionally misrepresent evidence so as to deprive a litigant of due process fall outside the protection of the absolute privilege recognized by state law. We note that Drees did not raise in his responses to Kile's or Vincent's motions to dismiss any argument that the absolute judicial privilege is subject to such an exception, so we will not address that contention, see Andrews v. Merritt Oil Co., 612 So.2d 409, 410 (Ala.1992) ("This Court cannot consider arguments raised for the first time on appeal; rather, our review is restricted to the evidence and arguments considered by the trial court."), except to state that it appears contrary to longstanding Alabama law, see Adams v. Alabama Lime & Stone Corp., 225 Ala. 174, 142 So. 424 (1932) (recognizing that false statements uttered by counsel during the course of judicial proceedings are absolutely privileged so long as they are relevant to the subject *360 inquiry), and Lawson v. Hicks, 38 Ala. 279 (1862), and the law of other states. See Restatement (Second) of Torts § 586 (1977) ("An attorney at law is absolutely privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding, or in the institution of, or during the course and as a part of, a judicial proceeding in which he participates as counsel, if it has some relation to the proceeding.").
Drees has failed to present this court with any sound reasons for holding the trial court in error. Therefore, we affirm the judgment of the trial court dismissing the action.
The appellees are awarded attorney fees on appeal in the amount of $1,000 each.
APPLICATION OVERRULED; OPINION OF DECEMBER 18, 2009, WITHDRAWN; OPINION SUBSTITUTED; AFFIRMED.
PITTMAN and THOMAS, JJ., concur.
THOMPSON, P.J., concurs specially.
BRYAN, J., concurs in the result, without writing.
THOMPSON, Presiding Judge, concurring specially.
In the amended complaint in this action, Hajo Drees, the plaintiff, alleged, among other things, that attorney Sara Turner had improperly made untrue statements outside judicial proceedings to the effect that Drees had been convicted of domestic violence against his former wife and against one of his children. Although such a claim may be actionable because, as Drees says, an attorney is not immune from liability for certain statements made outside judicial proceedings, and thus the claim should not have been dismissed on the pleadings, Drees did not argue on appeal that the trial court had erred in dismissing that claim. Accordingly, this court has no alternative but to affirm the trial court's dismissal of the complaint in its entirety.