# McCalley *v.* Otey.

*Bill in Equity to enjoin Sale under Power in a Mortgage; and to redeem.*

1. *Equity jurisdiction; injunction of sale under the power contained in a mortgage.*—A court of equity will enjoin a sale under the power in a mortgage, when the mortgagee is proceeding in an improper or oppressive manner, or is perverting the power from its legitimate purpose; as where, having refused repeated tenders, he files a bill to foreclose, dismisses it without prejudice when the cause was ready for hearing, and advertises the land for sale under the power in the mortgage, with the avowed purpose of compelling the payment of another claim, which is disputed.

2. *Tender; effect of.*—A tender of the entire amount due, including interest, at any time between the maturity of the debt and the commencement of suit, stops the interest, and discharges the debtor from the costs of a subsequent suit.

3. *Same; when actual proffer of money is dispensed with.*—The actual proffer of money tendered is dispensed with, when the debtor, ready and willing to pay, is about to produce it, but is prevented by the creditor declaring he will not receive it.

4. *Payment of money into court not a prerequisite of a bill to redeem and to enjoin the execution of a power of sale.*—The payment of money into court is not essential to the equity of a bill filed by the mortgagor to redeem and to enjoin the execution of a power of sale, when the bill alleges a tender, several times repeated, and its refusal, and that the complainants "are now ready and willing to pay, and have been ready and willing to pay ever since" the tender.

5. *Tender; when sufficient to stop payment of interest.*—To avoid the payment of interest after tender, the debtor must tender the exact amount due, and he must keep that amount ready at all times to be paid to the creditor upon his demand, if he should conclude to receive it.

6. *Same; burden of proof.*—When the tender is denied, the burden of proving that the amount tendered was kept at all times in readi-
• Vol. xcix.

ness to be paid upon the demand of the creditor, is upon him who pleads the tender. (Stone, C. J. dissenting.)

APPEAL from the Chancery Court of Madison.

Heard before the Hon. THOS. COBBS.

The bill in this case was filed on July 19, 1889, by Mrs. Octavia A. Otey and her children, against Charles S. McCalley and others ; and sought to have a threatened sale of land, under a power contained in a mortgage, enjoined, and to be allowed to redeem said property from under the mortgage. The mortgage was executed on August 6, 1876, by Mrs. Octavia A. Otey, and was given to secure the payment of money borrowed by her from a Miss Ford, who afterwards married W. J. McCalley. Having survived her husband, Mrs. McCalley, nee Ford, devised and bequeathed all of her property, including the note and mortgage executed by Mrs. Otey, to Miss Martha T. Russell. The money was borrowed by Mrs. Otey at an usurious rate of interest ; the interest was paid annually until September 1, 1884, when, upon a statement made between the parties, it was ascertained that the balance due upon said mortgage was $1,480.76. Upon Miss Russell agreeing to accept $1,200 in full satisfaction and discharge of the debt, Mrs. Otey applied to Charles S. McCalley to advance this amount for her and have the mortgage assigned to him as security. Charles S. McCalley agreed to do this, and by the terms of the agreement, evidenced by letters exchanged between him and Mrs. Otey, the latter agreed to pay him annually the legal interest on $1,480.76 as the amount due until January 1, 1888; and he was then to surrender the mortgage to her on payment of $1,200. The bill alleged the punctual payment of interest to said Charles S. McCalley as stipulated up to December 31, 1887 ; that on that day John M. Hampton, for her, tendered to said McCalley $1,318.46, which was the $1,200 agreed to be accepted by McCalley on January 1, 1888, together with the interest on $1,480.76 for one year; that McCalley refused to accept the tender thus made, and also refused to accept a like tender made by the said Hampton, for her, on January 2, 1888, and in July, 1889, before the filing of the present bill. It was also alleged in the said bill that on July 2, 1888, the said Charles S. McCalley filed his bill in the Chancery Court against Octavia A. Otey, to foreclose the said mortgage ; that the defendant filed answers to said bill, proof was taken by the parties to the cause, and the same was ready for hearing; but that at the March term of the Chancery Court of Madison County the said Charles S.

McCalley dismissed his bill without prejudice, and advertised the lands conveyed in said mortgage, for sale, under the power contained therein, on July 22, 1889.

The complainants also alleged that the said proposed sale of land on July 22, 1889, "was not for the *bona fide* purpose of collecting the debt secured ·by said mortgage, but for the purpose of coercing the payment of another claim of debt against said Octavia A. Otey of several hundred dollars, which she never contracted," and which she is not liable to pay.

The prayer of the bill is, that the said Charles S. McCalley be enjoined and restrained from selling the said lands under the power of sale contained in the mortgage ; that he be required to accept said sum, $1,318.46, "which complainants are now ready and willing to pay him, and have been ready and willing to pay him ever since December 31, 1887, in redemption of said mortgage, and for payment and satisfaction of said debt secured by it."

On January 6, 1890, the respondent, Charles S. McCalley, filed his answer to said bill of complaint, and among other things, denied therein, that there had ever been a sufficient tender made by Mrs. Otey of the amount due upon the mortgage debt ; and alleged that the attempted tender made by said Hampton was made for his own benefit under a contract of purchase of certain lands contained in the mortgage from Mrs. Otey, in which he agreed to pay the annual interest, and to pay the mortgage debt on January 1, 1888 ; and further alleged that the result of accepting the payment from said Hampton and the transfer of the mortgage to him, would be to defeat the collection of the debt due to said Charles S. McCalley from Mrs. Otey, which was not secured by the mortgage ; that the said McCalley was unwilling to do this, unless the said Hampton agreed to pay the non-secured debt of Mrs. Otey to respondent.

On March 21, 1890, the complainants amended their bill by averring that they were "ready and willing to pay said McCalley the said sum of $1,318.46 so tendered him as aforesaid, and have been ready and willing to pay the said sum to him ever since the 31st of December, 1837, and now bring the same into court and deposit it with the register to abide the order and decree of the court."

The testimony, as shown by the depositions taken in behalf of the complainants, was to the effect that on December 31, 1887, the said J. M. Hampton tendered to the said Charles S. McCalley the amount of $1,318.46 ; that this tender was refused, and that said Hampton repeated the tender

on January 2, 1888, and about the 1st of July, 1889, shortly before the filing of the bill in this case, and that each of these tenders was refused. The testimony, as shown by the depositions of the said McCalley, substantiated the allegations of his answer.

On the final submission of the cause, upon the pleadings and proof, the chancellor decreed that, "it appearing to the court from the pleadings and evidence, that the money tendered was at all times ready to be paid when the defendant McCalley would receive it, the court is of the opinion that no interest should be charged;" and further decreed that the sum of $1,318.46 paid into court be declared the property of the said Charles S. McCalley, and that he receive the same in full satisfaction of the debt and mortgage, and that the temporary injunction be made perpetual. This appeal is prosecuted by the said Charles S. McCalley, and the final decree of the chancellor is here assigned as error.

R. C. BRICKELL and LAWRENCE COOPER, for appellants.—A court of equity will restrain the execution under a power of sale in a mortgage, only when, by clear and precise allegations of facts, it is shown that the sale is against good conscience and will work irreparable injury.— *Vaughan v. Marable*, 64 Ala. 60; *Security Loan Asso. v. Lake*, 69 Ala. 456; *Glover v. Hembree*, 82 Ala. 324; 2 Jones on Mortg., § 1801, *et seq.*; 1 High on Inj., § 443, *et seq*; *Daughdrill v. Sweeny*, 41 Ala. 310. If the mortgage debt is admitted to be due, there must be payment or the bill must tender and bring into court the amount admitted to be due.—*Daughdrill v. Sweeny*, 41 Ala. 310; 2 Jones on Mortg., § 443. The tender, to be available, must conform to the requisites of a court of law. It must be a tender of the whole amout due.—*Smith v. Anders*, 21 Ala. 782; *Daughdrill v. Sweeny*, 41 Ala. 310; *Shields v. Lozear*, 22 N. J. Eq. 447; *Becker v. Boon*, 61 N. Y. 317. 7 Wait's Act. & Def., 590. Where a bill alleges a tender previous to the filing thereof, to render the prior tender available to avoid the payment of interest thereafter, it must be shown that the tender has been kept good; was always ready to be surrendered to the creditor upon his demand.—*Rose v. Brown*, 1 Am. Dec. 22; *Moynahan v. Moore*, 77 Am. Dec. 468; *Crain v. McGoon*, 29 Am. Rep. 37; *Tompkins v. Batie*, 38 Am. Rep. 361; *Shields v. Lozear*, 22 N. J. Eq. 447; *Aulger v. Clay*, 109 Ill. 487; *Tuthill v. Morris*, 81 N. Y. 94; *Alexander v. Caldwell*, 61 Ala. 543; *Park v. Wiley*, 67 Ala. 310; *Frank v. Pickens*, 69 Ala. 369.

[McCalley v. Otey.]

TRANCRED BETTS, *contra.*—A court of equity should enjoin a sale under the power contained in a mortgage when the facts and circumstances are such as shown in the present case.—*Struve v. Childs*, 63 Ala. 473 ; *McCalley v. Otey*, 90 Ala. 302. The tender in the present case was sufficient to avoid the payment of interest after December 31, 1887.— *McCalley v. Otey*, 90 Ala. 302 ; *Rudulph v. Wagner*, 36 Ala. 698 ; 77 Amer. Dec. 485, note c.

COLEMAN, J.—When this case was here on a former appeal, (90 Ala. 302), the equity of the bill was fully sustained, and it was held that a court of equity would enjoin the execution of a power of sale, when it appeared that the mortgagee was proceeding in an improper or oppressive manner, or was perverting the power from its legitimate purpose ; as where, having refused repeated tender, he files a bill to foreclose, dismisses it without prejudice when the cause was ready for hearing, and advertises the land for sale under a power in the mortgage with the avowed purpose of compelling the payment of another claim which is disputed.—*McCalley v. Otey*, 90 Ala. 302 ; *Strum v. Childs*, 63 Ala. 473. The evidence reasonably satisfies us that a tender was made in December, 1887, of the full amount due, of the refusal to accept it, and an attempt, after the tender, on the part of the mortgagee to coerce the payment of a disputed claim, not embraced in the mortgage debt. In addition to the testimony offered by complainant on this question, the respondent, Jno. S. McCalley, testifying in regard to the tender made by John M. Hampton, says : "I refused to take it from him unless he paid also Mrs. Octavia A. Otey's merchandise account." The merchandise account constituted no part of the secured debt, and its correctness was controverted.

The present bill was filed on the 19th of July, 1889. It appears from the testimony of the witness Hampton that a tender of the same amount was made about the 1st of July, just before the present bill was filed, and refused upon the same grounds, as that admitted by the respondent, above referred to. After answer and demurrer to the bill, complainants amended their bill, on the 21st day of March, 1890, by averring a readiness and willingness to pay the debt ever since the 31st day of December, 1887, when the debt fell due, and a tender of the money was first made.

The only other assignment of error which we think it necessary to consider, applies to so much of the decree of the court, as denied to the respondent any interest upon his

[McCalley v. Otey.]

debt. A tender of the whole amount due, principal and interest, at any time after the debt falls due, but before suit is brought, stops the interest, and discharges the party from the cost of a subsequent suit. The actual proffer of the money is dispensed with, if the debtor is ready and willing to pay, and about to produce it, but is prevented by the creditor declaring he will not receive it.—*Rudulph v. Wagner*, 36 Ala. 702. In *McCalley v. Otey*, 90 Ala., *supra*, it is said : "A tender refused does not operate to discharge the debtor from the debt, but only releases him from the payment of the interest subsequently accruing; and to have this effect the amount tendered must be in readiness to be paid at any time called for, and on plea must be followed by the payment of the money into court. It is not meant, however, that the identical money tendered must be kept; it is sufficient if the party holds himself ready to pay at all times."

We have already held that the payment of the money into court was not necessary to sustain the equity of the bill for redemption, nor was its payment into court essential under the facts of the case, to authorize a court of equity to enjoin the execution of the power of sale.—90 Ala. *supra; McGuire v. Van Pelt*, 55 Ala. 344; *Carlin v. Jones, Ib.* 624. We are considering now the question of a tender as affecting the payment of interest. Unless the tender is kept good all the time, that is, unless the debtor is willing and prepared to make payment at any time after the tender, if the creditor should conclude to receive it, and until the money is paid into court upon his plea, the debtor is chargeable with interest. He can not make a tender to-day and then use the money for his profit, and escape the payment of interest. He is released from the payment of interest upon the supposition that he has been deprived of the use of the money, by holding himself in readiness all the time to pay his creditor upon his demand. The burden to make this proof when the tender is denied rests upon the debtor who seeks to avail himself of the benefit of a tender. The answer of the respondent creditor expressly denied the averment of complainant's bill, that he was ready all the time and willing to pay the amount tendered.—*Thayer v. Meeker*, 86 Ill. 474; 77 Amer. Dec. 468, note p. 485; 7 Wait's Act. & Def., 596, § 17. The case of *Curtiss v. Greenbanks*, 24 Vt. 536, is directly in line with *McCalley v. Otey*, 90 Ala., *supra*, that the "identical" money need not be kept on hand, and it lays down the general principle as we have declared it, that he must be ready and willing at all times to make good his tender.

That case, (24 Vt., *supra*,) does not treat of the question of the burden of proof.

The chancellor was of opinion that the proof sustained the averments of the bill as amended. We have examined the testimony very closely, and we fail to discover any proof tending to show, that complainant kept good the tender. We think it satisfactorily shows a tender on the 31st of December, 1887, and another of the same amount on the 2d of January, 1888, and another about the first of July, 1889, and that the amount previously tendered was paid into the court at the time the amendment to the bill was filed in March, 1890. There is no proof that the tender was kept good, that is a readiness to pay, as we have defined a valid tender, in the intervals from January 2d, 1888 to July, 1889, and from this latter period to March, 1890, when the money was paid into court. We do not think the evidence sufficient on this point, and hold that the chancellor erred in decreeing that respondent mortgagee was not entitled to any interest. In all other respects his decree is affirmed. We will not render any final decree here, but reverse and remand the cause, leaving it in the discretion of the Chancery Court to permit the taking of further testimony on this point, if deemed essential to promote the ends of justice.

Reversed and remanded.

STONE, C. J., *dissenting.*—I can not agree that in passing on the issue of tender, the law casts on him who pleads such defense the duty and burden of proving that he has at all times kept on hand the amount of money he claims to have tendered; and that failing to do so, the plea is not made good. I think, the sounder and better rule is, that if the tender is made, sufficient in amount, and when the tender is pleaded the money is produced and deposited in court, this is all the defendant need do, unless by a further act of the creditor he has been put in default. The person to whom a sufficient tender has been made and refused by him, may destroy the effect of such tender, by subsequently demanding the money tendered. If on such subsequent demand the debtor fails to pay the money, he thereby loses all benefit the tender had secured to him. He must have the money ready to pay *when called on*, and must pay it if called on. This is what I understand to be the proper meaning and extent of the maxim that the tender must be kept good. He must have the money when needed and called for. He need not have it between the time of the tender

and the filing of the plea, unless it is called for.  The law should not require a useless thing.

There are authorities both ways on this question.  I think the sounder and more reasonable theory—the one which will secure a mutually just administration of the law—is the one I have sketched.  In *Curtis v. Greenbanks*, 24 Vt. 536, the principle is thus stated: "The person tendering is at liberty to use it [the money tendered] as his own.  All he is under obligation to do, is to be ready at all times to pay the debt in currency when requested."  To the same effect are *Colby v. Stevens*, 38 N. H. 191; *Mich. Cen. R. R. Co. v. Dunham*, 30 Mich. 128; 7 Wait's Act. & Def., 592.  There is, to my mind, a sound, logical reason for this.  The tender does not change the ownership of the money.  It remains the property of the tenderer until accepted, or agreed to be accepted, or until it is deposited in court with the plea, when it passes into the custody of the court.  He remains liable for its safe preservation.  To me it is illogical to hold that one who is, in every sense, the owner of money, may not use and utilize it, provided he thereby impairs the legal rights of no other person.