SMITH, Justice.
J. Gregory Kennedy appeals from a judgment in favor of Boles Investments, Inc. (“BI”), and Ian Boles (“Boles”) in an action stemming from the sale of real property in Baldwin County. We affirm.
7. Facts and Procedural History
Kennedy owned a 1.55-acre parcel of beachfront property in Orange Beach (“the property”). In April 2004, Boles and Kennedy entered into a contract for Boles to purchase the property (“the purchase agreement”). Before the closing, on July 2, 2004, Boles assigned the contract to BI, a Delaware corporation he solely owned.
The purchase price of the property was $3.7 million. BI paid Kennedy $370,000 as an initial down payment, and BI executed a promissory note in favor of Kennedy for $3.33 million. The terms of the note required a monthly interest payment of $16,650 for five years and then a balloon payment of the principal, $3.33 million, would be due on July 2, 2009. Relevant to this appeal, the promissory note contains a prepayment provision, which states: “[BI] may prepay this Note, in its entirety, including all interest and principal then due, upon payment of a penalty equal to five percent (5.0%) of the amount being prepaid.”
On the day of the closing, BI was not qualified to do business within the State of *63 Alabama. In light of this fact, Kennedy and BI also entered into a “post-closing agreement,” on July 2, 2004, pursuant to which BI agreed to qualify to do business in the State of Alabama by July 31, 200k-The post-closing agreement provides that “as a material inducement” for Kennedy to close the loan, “[Kennedy] has required that this Agreement be executed and delivered to [him].” The agreement further provides that BI’s failure to qualify to do business in the State of Alabama by July 31, 2004, “shall constitute a default under the Loan.” BI and Boles assert that as the result of a mistake of their counsel, BI did not qualify to do business in the State of Alabama until July 5, 2005.
Under the terms of the purchase agreement, Kennedy deeded the property to BI but reserved a vendor’s lien deed for the property until the note was paid off. Kennedy testified that as part of the sale of the property Boles also orally agreed to give Kennedy a right of first refusal to repurchase the property. Boles denies that he gave Kennedy a right of first refusal.
In April 2005, an individual named Rex Hall contracted with BI to purchase the property for nearly $16 million. BI and Boles assert that Hall sought to assemble purchase contracts on several adjoining properties for the development of condominiums and that the purchase price of $16 million was consistent with the appraised value of the property under a multifamily-zoning classification (at that time the property was classified as “RS-1”). The agreement provided Hall with a 45-day due-diligence period in which he could terminate the agreement in his absolute discretion. During this 45-day period Boles told Kennedy that BI had entered into an agreement to sell the property and that BI planned to prepay the promissory note in the near future. Boles testified that when he told Kennedy of the agreement to sell the property, Kennedy became agitated and stated that he needed “to make some more money out of that deal.” Boles further testified that Kennedy requested a copy of the agreement between BI and Hall “so that he could go to ... the purchasers, to get the money out of them,” and said that “if that doesn’t happen or if you don’t pay me, then I’m going to have to get my lawyers involved.”
A former employee of Wachovia Bank, Michael Tarlton, testified that the bank had approved Boles for a loan to pay off the note on the property. Tarlton testified that “[t]he credit underwriter notified me that the loan was approved, and I then notified Mr. Boles that the loan was approved.” Tarlton further testified that the credit underwriter notified Boles’s counsel that the bank had approved the loan and that “[t]he bank was ready to wire the money [on June 28 or 29, 2005].”
Counsel for BI and Boles faxed and mailed a letter dated June 29, 2005, to Kennedy’s counsel stating, among other things, that BI and Boles had “secured alternate financing and will pay off Mr. Kennedy.” The letter further states:
“Per our calculations, the total amount of principal and interest due to your client as of July 2, 2005, is $3,346,500.00 plus the 5% penalty of $166,500.00[1] for a total payoff of $3,515,000.00. Further, there will be a per diem interest charge of $555.00. Please confirm that the above payoff is correct and forward me wiring instructions for your client (or to your trust account, if we are to make payment to you on behalf of your client) as soon as possible so that the total funds can be paid to your client.”
*64 The next day, June 30, 2005, counsel for BI and Boles faxed and mailed another letter to Kennedy’s counsel’s stating:
“We have recalculated the payoff, and note that there was a small mathematical error. As of July 2, 2005, the total payoff to your client is $3,513,150.00. Please confirm, in writing, that this revised payoff is correct and notify me immediately with wiring instructions so that there will be no delay in paying your client off. If I have not heard from you, with respect to the payoff and wiring instructions, by 5:00 E.D.T. today, I will assume that the above payoff is correct and I will wire the proceeds to [our local counsel’s] trust account, and he will deliver a payoff check to you tomorrow.”
Presumably in response to this letter, Kennedy’s counsel faxed counsel for BI and Boles a note on June 30, 2005, stating:
“As of 4:00 p.m. E.D.T. Mr. Kennedy has filed a Complaint in the Circuit Court of Baldwin County, Alabama. Until the issues addressed in the complaint are resolved, Mr. Kennedy will not accept any funds tendered to pay off the Promissory Note securing the Property at issue in the complaint.”
Boles never closed the loan with Wachovia or sent the prepayment tender to Kennedy.
The complaint Kennedy filed against BI and Boles in the Baldwin Circuit Court contained three counts. The first count alleged that BI had breached the post-closing agreement by failing to qualify to do business in the State of Alabama by July 31, 2004. The second count alleged that BI fraudulently induced Kennedy to enter into the purchase agreement by providing him an oral right of first refusal to repurchase the property. The third count alleged that BI had defaulted on “the security documents” and the post-closing agreement by failing to keep the property in good repair and condition. The same day, June 30, 2005, Kennedy filed in the Baldwin Probate Court a notice of lis pen-dens as to the property. See § 35-4-131(a), Ala.Code 1975.
BI and Boles filed nine counterclaims against Kennedy on July 8, 2005. The first counterclaim sought a “preliminary and/or permanent injunction” requesting that the trial court order BI to pay off the balance of the note, order Kennedy to accept the prepayment of the note, and order Kennedy or the clerk of court to release all “security instrument documents” related to the property. BI and Boles also asserted the following counterclaims against Kennedy: slander of title, breach of contract, tortious breach of contract, negligence, wantonness, tortious interference with business relations, extortion, and violation of the Alabama Litigation Accountability Act (“ALAA”). They sought compensatory and punitive damages under the counterclaims for tor-tious breach of contract, wantonness, tor-tious interference with business relations, and extortion; they sought compensatory damages under the counterclaims for slander of title, breach of contract, negligence, and violation of the ALAA.
Kennedy’s counsel mailed and faxed a letter dated July 28, 2005, to counsel for BI and Boles stating, “Mr. Kennedy requests that all future payments or actual tenders made by your client be held in escrow in the Registry of the Court ... until the voidability issue can be addressed by the Court.” The record indicates that BI and Boles did not comply with this request. BI made monthly interest payments to Kennedy from July 2004 to January 2006 via wire transfer or check. In January 2006, BI and Boles moved the trial court to order that the monthly interest payments be deposited with the clerk *65 of court. The trial court granted the motion, and from February 2006 until the fall of 2006, BI made monthly interest payments into the court. As referenced above, neither BI nor Boles tendered the principal due under the note into the court.
BI’s sale of the property to Hall ultimately fell through. BI and Boles assert that the sale fell through because the lis pendens disparaged BI’s title to the property. After the sale to Hall was unsuccessful, BI transferred the property to Boles.
Boles and an entity known as WCI Communities, Inc. (“WCI”), executed a letter of intent on November 15, 2005, in which WCI indicated its intent to purchase the property for $16.5 million. An agreement was prepared that provided that Boles would convey clear title to the property. Boles testified that his counsel advised him not to sign the agreement “due to the title issue.” The sale to WCI never took place. A former employee of WCI, Cameron Price, testified that he believed “WCI made the decision to walk away from the deal because of the cloud due to the lis pendens on Ian Boles’s property and his— his verbal direction that he was not interested in curing that within a date certain time period.” WCI later offered Boles $7 million for the property; Boles rejected the offer. WCI then offered Boles $8.5 million for the property if WCI could secure concessions from adjoining property owners; Boles rejected this offer also. The record is not clear on whether these offers also required resolution of the lis pendens issue. Price testified that the lis pendens on the property was a “deal killer.”
Meanwhile, on August 12, 2005, Kennedy moved for a judgment (1) declaring the purchase agreement between Kennedy and BI void and (2) returning full title and possession of the property to Kennedy. Thereafter, BI and Boles moved for a summary judgment as to “any and all claims” asserted by Kennedy and on their counterclaim seeking injunctive relief. BI and Boles did not move for a summary judgment as to the remainder of the counterclaims they asserted against Kennedy.
The parties then filed a stipulation for a bifurcated trial, stating:
“[T]he parties give notice to the court of their stipulation for a bifurcated trial in this case with [Kennedy’s] declaratory judgment and [BI and Boles’s] claims for injunctive relief.... The parties stipulate that the court’s ruling will be entered as a final order and the necessary certifications will be made by the trial court in order that an immediate appeal can be taken by the non-prevailing party. The remaining claims for money damages will be tried during the next available, non-jury trial term to be set by the court.”
On January 11, 2006, after a hearing on Kennedy’s declaratory-judgment motion and BI and Boles’s summary-judgment motion, the trial court entered a one-page order, stating: “motion for summary judgment is granted re: declaratory judgment and injunctive relief in favor of defendants.” The order further stated: “There being no just cause for delay this order is made final. The issues remaining for claims for damages are withheld for future ruling and trial.” On January 24, 2006, Kennedy filed a notice of appeal. The trial court then entered an order on January 30, 2006, entitled “Amended Rule 54(b)[, Ala. R. Civ. P.,] Order Granting Summary Judgment for Defendants.”[2] As to BI and *66 Boles’s counterclaim for injunctive relief, the January 30, 2006, judgment ordered Kennedy to remove the lis pendens with respect to the property and enjoined Kennedy from taking any further actions to prevent BI or Boles from selling the property. The trial court certified its order as a final judgment pursuant Rule 54(b), Ala. R. Civ. P., stating that “summary judgment is appropriate in this matter, although the court has not and does not at this time adjudicate any claims for damages.” Kennedy then filed a “release of notice of lis pendens” in the trial court, stating that “subject to the pending appeal,” “Kennedy [does] hearby release and terminate [the lis pendens] in the Office of the Judge of Probate of Baldwin County with respect to the property.”
On February 17, 2006, counsel for Kennedy faxed and mailed counsel for BI and Boles a letter stating, “[E]nclosed please find our Notice of Foreclosure which will be advertised in the newspaper based on your client’s default under the terms of the financing statement.” BI and Boles then moved the trial court for an “injunction against foreclosure” noting that Kennedy had given notice that he would foreclose on the property. The trial court granted the motion in an order stating that “the pending foreclosure action by [Kennedy] is hereby enjoined and stayed pending the appeal and/or ruling by the Supreme Court of Alabama.” From all that appears in the record, Kennedy never commenced foreclosure proceedings against BI and Boles.
On February 15, 2008, this Court affirmed the January 30, 2006, judgment of the trial court without an opinion. Kennedy v. Boles Inv., Inc. (No. 1050543, Feb. 15, 2008), 28 So.3d 37 (Ala.2008) (table). In the trial court, Kennedy then moved for leave to amend the complaint to add two counts. The first count alleged that BI had breached the promissory note for which Kennedy sought “a judgment in favor of Kennedy and against Boles for $3,350,000 as principal due on the Note, plus interest thereon from the date of the default forward, and a reasonable attorneys’ fee of 15% of the Note principal plus expenses.... ” The second count alleged that Boles had breached his personal guaranty for “payment of the obligation of [BI] to plaintiff Kennedy of the amount bor *67 rowed from him, $8,330,000,” for which Kennedy sought a “judgment against [Boles] individually for $3,330,000.00, plus interest, costs and attorney’s fees.”
The trial court tried Kennedy’s claims alleging breach of the note and the personal guaranty and BI and Boles’s remaining counterclaims in a two-day bench trial on October 27 and 28, 2008. During the trial the following individuals testified: Kennedy; Boles; Tarlton; Shawn Brantley, a real-estate appraiser hired by Wachovia; Price; Joe Courtney, Jr., a real-estate appraiser hired by Boles; and Robin May Boles, Boles’s wife.
Wachovia had hired Brantley, a licensed real-estate appraiser, to appraise the property before approving the loan Boles intended to use to prepay the note. Brant-ley testified that he appraised the property on June 23, 2005, under the existing “RS-1 zoning” classification for $7.3 million and under the multifamily-zoning classification for $17.75 million. Brantley testified that “[t]here were properties in the immediate vicinity that were being rezoned from the RS classification to the [multifamily] classification.” At that same time, Boles had also hired Courtney, a licensed real-estate appraiser, to appraise the property. Courtney testified that he appraised the property on June 30, 2005, under the RS-1 zoning classification for $2,976 million and under the multifamily-zoning classification for $15 million.
On November 3, 2008, the trial court issued a judgment, stating:
“The court, having heard the testimony, ore tenus and having considered the evidence and the arguments of the attorneys, hereby orders, adjudges and decrees as follows:
“1) That all motions to amend the pleadings are granted; and
“2) That motions for judgment at the closing of the evidence are denied; and
“3) That all interest payments in the Clerk’s office in this case, including all accrued interest, [are] hereby awarded to [BI and Boles]; and
“4) That [BI and Boles] are hereby awarded a judgment against [Kennedy] in the sum of $3,650,000.00 plus costs of court; and
“5) That the notice of lis pendens filed by [Kennedy] is void and hereby held for naught and the Clerk of the court is ordered to file a release thereof.”
Kennedy then timely filed two post-judgment motions pursuant to Rule 59(e), Ala. R. Civ. P. In the first motion, Kennedy moved the trial court to alter and to clarify the November 3, 2008, judgment because, he argued, it was silent as to his claims alleging breach of the note and the personal guaranty. In the alternative, Kennedy argued that the trial court should clarify the judgment to provide that BI continues to be indebted to Kennedy on the note. In the second motion, Kennedy moved the trial court to vacate the November 3, 2008, judgment, as inconsistent with the law and undisputed evidence, or, in the alternative, to enter special written findings of fact and conclusions of law pursuant to Rule 52, Ala. R. Civ. P. The trial court denied both motions. Kennedy appeals.

II. Standard of Review

Because the trial court heard ore tenus evidence during the bench trial, the ore tenus standard of review applies. Our ore tenus standard of review is well settled. . “ ‘When a judge in a nonjury case hears oral testimony, a judgment based on findings of fact based on that testimony *68 will be presumed correct and will not be disturbed on appeal except for a plain and palpable error.’ ” Smith v. Muchia, 854 So.2d 85, 92 (Ala.2008) (quoting Allstate Ins. Co. v. Skelton, 675 So.2d 377, 379 (Ala.1996)).
“ ‘The ore tenus rule is grounded upon the principle that when the trial court hears oral testimony it has an opportunity to evaluate the demeanor and credibility of witnesses.’ Hall v. Mazzone, 486 So.2d 408, 410 (Ala.1986). The rule applies to ‘disputed issues of fact,’ whether the dispute is based entirely upon oral testimony or upon a combination of oral testimony and documentary evidence. Born v. Clark, 662 So.2d 669, 672 (Ala.1995). The ore tenus standard of review, succinctly stated, is as follows:
“ ‘[W]here the evidence has been [presented] ore tenus, a presumption of correctness attends the trial court’s conclusion on issues of fact, and this Court will not disturb the trial court’s conclusion unless it is clearly erroneous and against the great weight of the evidence, but will affirm the judgment if, under any reasonable aspect, it is supported by credible evidence.’ ”
Reed v. Board of Trs. for Alabama State Univ., 778 So.2d 791, 795 (Ala.2000) (quoting Raidt v. Crane, 342 So.2d 358, 360 (Ala.1977)). However, “that presumption [of correctness] has no application when the trial court is shown to have improperly applied the law to the facts.” Ex parte Board of Zoning Adjustment of Mobile, 636 So.2d 415, 417 (Ala.1994).
“The ore tenus standard of review extends to the trial court’s assessment of damages.” Edwards v. Valentine, 926 So.2d 315, 325 (Ala.2005). Thus, the trial court’s damages award based on ore tenus evidence will be reversed “only if clearly and palpably erroneous.” Robinson v. Morse, 352 So.2d 1355, 1357 (Ala.1977).

III. Discussion

A. Finality

Kennedy initially argues that this Court lacks subject-matter jurisdiction over this appeal because, he says, the November 3, 2008, order is not a final judgment. See McGowin Inv. Co. v. Johnstone, 291 Ala. 714, 715, 287 So.2d 835, 836 (1973) (holding that “a final judgment is necessary to give jurisdiction to this court on an appeal, and it cannot be waived by the parties”). This Court has routinely defined a final judgment as “an order ‘that conclusively determines the issues before the court and ascertains and declares the rights of the parties involved.’ ” Lunceford v. Monumental Life Ins. Co., 641 So.2d 244, 246 (Ala.1994) (quoting Bean v. Craig, 557 So.2d 1249, 1253 (Ala.1990)). Kennedy contends that the November 3, 2008, order fails to conclusively determine all the issues before the trial court because, he says, the order fails to dispose of his claims asserting that BI breached the promissory note and that Boles breached his personal guaranty to pay BI’s obligation under the note.
We conclude that the November 3, 2008, order adjudicated all pending claims and that it conclusively determined all the issues before the trial court. The trial court’s judgment that “all interest payments in the Clerk’s office ... [are] hereby awarded to [BI and Boles]” is an implicit denial of Kennedy’s claims that BI breached the promissory note and that Boles breached his personal guaranty to pay BI’s obligation under the note. The terms of the promissory note provide that BI’s interest-payment obligation would terminate upon payment of the principal. Accordingly, the trial court’s return of the interest payments to BI and Boles demonstrates that the trial court found that BI *69 and Boles properly tendered prepayment of the note and that that tender terminated BI’s interest-payment obligation. If BI properly tendered prepayment, BI did not breach the note and Boles did not breach his guaranty to pay BI’s obligation on the note.
The trial court’s general award to BI and Boles of $3.65 million plus court costs is an implicit resolution of all BI and Boles’s counterclaims. A trial court is not required provide a precise calculation for its damages award following ore tenus proceedings, and, in this case, the trial court’s failure to attribute the money damages to a particular counterclaim does not affect the finality of the judgment. An appellate court may attribute a general-liability award resulting from an ore tenus proceeding to any count that is supported by the evidence, and, as discussed below, we conclude that the trial court’s $3.65 million judgment is supported by BI and Boles’s breach-of-contract counterclaim. See Hamilton v. Hamilton, 255 Ala. 284, 288, 51 So.2d 13, 17 (1951) (holding that “[a general] finding of the trial court, sitting without a jury,” “will be referred to a count which is sufficient and which is supported by the evidence” (citing Evans Bros. Constr. Co. v. Steiner Bros., 208 Ala. 306, 94 So. 361 (1922))). Because the $3.65 million judgment is supported by BI and Boles’s breach-of-contract counterclaim, we infer the denial of BI and Boles’s remaining counterclaims. Alabama law is settled that, in the absence of an order severing a claim or ordering a separate trial, “[a] judgment will be deemed a final judgment on all issues pleaded and any claims which are not specifically disposed of in the judgment will be deemed to have been rejected or denied.” Poston v. Gaddis, 372 So.2d 1099, 1101 (Ala.1979). From all that appears in the record, BI and Boles’s counterclaims were tried during the bench trial and no party to the proceeding sought a separate proceeding for any counterclaim. See also Roberts v. Security Trust & Sav. Bank of Brilliant, 470 So.2d 674, 675 (Ala.1985) (holding that even though the record contained no order dismissing the defendant’s counterclaim, the judgment was final because the trial court entered a judgment in full for the plaintiff and “[t]hat holding implicitly denied the counterclaim”). The November 3, 2008, order is a final judgment.

B. Interest Payments

As to the merits of the November 3, 2008, order, Kennedy first argues that the trial court erred by “stopping interest under the Note ... because [BI] did not keep the prepayment tender good, did not pay it into court, and never borrowed funds necessary to prepay the Note to Kennedy.” Kennedy’s brief, at p. 31. Kennedy liberally construes the order of the trial court to frame his argument because the November 3, 2008, order does not “stop[] interest payments under the Note.” Instead, the trial court ordered that “all interest payments in the Clerk’s office in this case, including all accrued interest, [are] hereby awarded to [BI and Boles].”
Kennedy appears to argue that the trial court’s return of the interest payments to BI and Boles was error because, he contends, BI’s interest-payment obligation did not terminate upon BI’s prepayment tender. Kennedy argues that a prepayment tender stops interest only if the tender is “kept good” and that “[BI] did not keep good the prepayment tender” because BI did not pay the tender into the court. Kennedy’s brief, at p. 35. To support the contention that a prepayment tender stops interest only if it is kept good, Kennedy relies on McCalley v. Otey, 99 Ala. 584, 589, 12 So. 406, 407 (1893) *70 {“McCalley II ”), in which this Court stated:
“Unless the tender is kept good all the time, that is, unless the debtor is willing and prepared to make payment at any time after the tender, if the creditor should conclude to receive it, and until the money is paid into court upon his plea, the debtor is chargeable with interest. He can not make a tender to-day, and then use the money for his profit, and escape the payment of interest. He is released from the payment of interest upon the supposition that he has been deprived of the use of the money by holding himself in readiness all the time to pay his creditor upon his demand.”
(Emphasis added.) Kennedy’s application of this passage to the facts of this case is misguided, however, because the Court in McCalley II appears to be referring to a situation in which the debtor independently fails to keep a tender good, as opposed to a situation in which the debtor fails to keep the tender good because the creditor rejects the tender. This conclusion is supported by the fact that before the above-quoted passage in McCalley II, the Court noted with approval that in McCalley v. Otey, 90 Ala. 302, 8 So. 157 (1890) (“McCalley I ”), it held “ ‘[a] tender refused does not operate to discharge the debtor from the debt, but only releases him from the payment of interest subsequently accruing.’ ” 99 Ala. at 589, 12 So. at 407 (quoting McCalley I, 90 Ala. at 308, 8 So. at 159 (emphasis added)). In McCalley II, this Court further stated that “tender of the whole amount due, principal and interest, at any time after the debt falls due, but before suit is brought, stops the interest...99 Ala. at 589, 12 So. at 407. See also Odum v. Rutledge & Julian R.R., 94 Ala. 488, 496, 10 So. 222, 224 (1891) (“the proffer of the money is dispensed with, if the party is ready and willing to pay the same, but is prevented by the creditor’s declaring that he will not receive it”); 13 Sarah Howard Jenkins, Corbin on Contracts § 67.6, at 33 (Joseph M. Perillo ed., 2003) (stating that a “creditor [who refuses proper tender] has no right to interest beyond the due date”). These general rules are now codified in § 7-3-603(c), Ala.Code 1975,[3] which provides, in pertinent part: “If tender of payment of an amount due on an instrument is made to a person entitled to enforce the instrument, the obligation of the obligor to pay interest after the due date on the amount tendered is discharged....” (Emphasis added.) Kennedy contends that § 6-8-100, Ala.Code 1975, mandates that the tender must be paid into the court.[4] This section has no application to the facts of this case because BI did not tender prepayment to answer a claim by Kennedy, and § 6-8-100 is “intended to prescribe a rule of pleading only, and not to change any rule of substantive law.” Maples v. Douglass, 205 Ala. 94, 95, 87 So. 585, 586 (1920) (referring to the predecessor to § 6-8-100).
We conclude that BI owed no interest payments to Kennedy after Kennedy rejected BI’s prepayment tender. The record shows that the trial court heard sufficient evidence indicating that BI had tendered prepayment to Kennedy. “ ‘Where evidence is presented to the trial court ore tenus, a presumption of correctness exists as to the court’s conclusions on issues of fact; its determination *71 will not be disturbed unless it is clearly erroneous, without supporting evidence, manifestly unjust, or against the great weight of the evidence.’ ” Pollard v. Unus Props., LLC, 902 So.2d 18, 23 (Ala.2004) (quoting American Petroleum Equip. & Constr., Inc. v. Fancher, 708 So.2d 129, 132 (Ala.1997)). Accordingly, we conclude that the trial court did not err in awarding the interest payments to BI and Boles.

C. Tender

Kennedy further argues that the November 3, 2008, order improperly allows BI and Boles to benefit from the prepayment tender and to avoid its burden because, he argues, the order does not enter a judgment against BI and Boles for the prepayment-tender amount. Kennedy contends that if this Court “affirms the trial court’s finding of tender and cessation of interest, the trial court should be directed to enter judgment for Kennedy on the note against BI and against Ian Boles on the guaranty for $3,513,000, the prepayment amount.” Kennedy’s brief, at p. 41. This argument is misguided because our affirmance of that portion of the trial court’s judgment returning interest payments to BI and Boles is based upon a finding that Kennedy breached the note by rejecting BI’s prepayment tender. Consistent with this finding, BI did not at that juncture breach the note and Boles did not at that point breach his alleged guaranty to pay BI’s obligation on the note. Therefore, Kennedy is not entitled to a judgment against BI or Boles in this proceeding in the absence of a breach.
Kennedy did not have another claim seeking a judgment on the note; his only pending claims alleged a breach of the note by BI and a breach of a personal obligation to pay the note by Boles.

D. Damages

Kennedy next argues that the trial court erred in awarding $3.65 million to BI and Boles because, he says, BI and Boles’s counterclaims are barred by the door-closing statute, § 10-2B-15.02, Ala.Code 1975. The door-closing statute provides:
“(a) A foreign corporation transacting business in this state without a certificate of authority ... may not maintain a proceeding in this state without a certificate of authority. All contracts or agreements made or entered into in this state by foreign corporations prior to obtaining a certificate of authority to transact business in this state shall be held void at the action of the foreign corporation or by any person claiming through or under the foreign corporation by virtue of the contract or agreement; but nothing in this section shall abrogate the equitable rule that he who seeks equity must do equity.”
§ 10-2B-15.02(a), Ala.Code 1975. Kennedy argues that under the door-closing statute BI and Boles cannot enforce the promissory note because BI failed to qualify to do business in Alabama at the time BI and Kennedy entered into the note.
This Court previously affirmed the trial court’s January 30, 2006, judgment finding that Kennedy had waived his right to assert the door-closing statute in order to void the agreements he had entered into with BI, and, based on the law-of-the-case doctrine, we see no reason to reconsider this issue. “The law-of-the-case doctrine provides that when a court decides upon a rule of law, that rule should continue to govern the same issues in subsequent stages in the same case, thereby hastening an end to litigation by foreclosing the possibility of repeatedly litigating an issue already decided.” Belcher v. Queen, 39 So.3d 1023 (Ala.2009) (citing Ex *72 parte Discount Foods, Inc., 789 So.2d 842, 846 n. 4 (Ala.2001)).
Regarding whether Kennedy waived his right to void his agreements with BI, the January 30, 2006, judgment provides:
“[Kennedy] also maintains that the Defendant corporation, [BI] was not qualified to do business in the state of Alabama at the time it entered into the agreement relating to the sale of the property to [BI]. While it is a true statement of fact, the [door-closing] statute also requires that he who seeks equity must do in equity. In this particular case [Kennedy] and his attorney at the time were fully aware of the situation and the facts relating to [BI]. [BI] had been created as a Delaware corporation less than two weeks prior to the closing of the transaction in this matter. At closing, [Kennedy] and the Defendant corporation, [BI,] entered into an agreement by which the fact that [BI] was not qualified to do business in Alabama was recognized by the parties and the parties agreed that if [BI] did not qualify by the end of July 2004, then such failure 1... may be and constitute a default’ under the terms of the financing agreement entered into between the parties at closing.
“In drafting the closing documents, [Kennedy] did not preserve any right to claim or take the position that the transaction was ‘void,’ rather, his remedy as expressly stated in the contract was to declare a default at his option. At no time has [Kennedy] attempted to foreclose, that being his remedy under the financing document.
“The Court is of the opinion that the claim made by [Kennedy ] that he was entitled to avoid the entire transaction and have the property in question re-conveyed to him is without merit. The law in Alabama is clear that an out of state non-qualified corporation may own real estate in the state of Alabama and bring an action to protect such ownership without qualifying to do business here. Moreover, a non-qualified corporation may enforce its property rights in the courts of this state. In this particular case, even if [BI] was ‘doing business’ as that term may have been established by the courts of this state, then and in such event, [Kennedy ] knowingly waived his right to declare the ‘contract’ void by entering into the transaction and the post-closing contract providing for default knowing full well of the status of[BI ] at that time.”
(Emphasis added.)
Kennedy argues that this judgment is limited to his waiver of the right to void the sale of the property — the deed itself— pursuant to the door-closing statute, and, therefore, that this Court’s affirmance of the January 30, 2006, judgment did not address the issue whether Kennedy waived the right to void other agreements entered into by Kennedy and BI related to the sale of the property, such as the promissory note. We do not agree that the January 30, 2006, judgment is limited to the purchase agreement. In the January 30, 2006, judgment the trial court found that “the claim made by [Kennedy] that he was entitled to avoid the entire transaction ... is without merit” because, the court found, Kennedy knowingly waived the right to void agreements made the basis of the sale by entering into the transaction and the post-closing agreement. (Emphasis added.) Indeed, in Kennedy’s motion for a declaratory judgment Kennedy broadly asserted that “[t]he conveyance contract and agreements entered by [BI] should be deemed void by this Honorable Court” under the door-closing statute because BI was not qualified to do business within the State of Alabama when those agreements were en *73 tered into. (Emphasis added.) We conclude that this Court’s earlier affirmance of the January 30, 2006, judgment established a general rule of law applicable to further proceedings in this case that Kennedy had waived the right to invoke the door-closing statute to void any agreements related to the sale of the property, including the promissory note.
This Court has recognized that it may disregard the law-of-the-case doctrine “when compelling circumstances call for the redetermination of a point of law on a prior appeal.” Ex parte Discount Foods, Inc., 789 So.2d at 846 n. 4. Here, however, Kennedy has not provided us with any reason to question the propriety of our affirmance of the January 30, 2006, judgment.[5] This Court has recognized that the purpose of the door-closing statute is “to provide some power for the State to protect Alabama residents from possible abuse by uncontrolled foreign corporations” and that, “[although the statute states that the contract is automatically void, in practice the contract is merely voidable at the option of the Alabama resident.” Green Tree Acceptance, Inc. v. Blalock, 525 So.2d 1366, 1370 (Ala.1988) (emphasis added). See also Moseley v. Commercial State Bank, 451 So.2d 967, 969 (Ala.1984) (holding that an Alabama defendant had waived the door-closing statute by not affirmatively pleading it as a defense); Loudonville Milling Co. v. Davis, 251 Ala. 459, 462, 37 So.2d 659, 661 (1948) (holding that “when a non-qualifying corporation engages in an intrastate transaction in furtherance of a main corporate function, a contract issuing from such transaction shall at the option of the other party to the contract be void”). In sum, we see no reason to disregard the law-of-the-case doctrine; accordingly, BI and Boles’s counterclaims are not barred by the door-closing statute.
Kennedy next argues that even if BI and Boles could recover damages for breach of contract, BI and Boles did not present sufficient evidence to support a $3.65 million damages award for the breach. Kennedy contends that BI and Boles improperly presented evidence of the contract price and market value of the property to establish their breach-of-contract damages and that such a calculation does not apply to this case because the underlying claim is breach of a promissory note, not breach of a real-estate-sales contract. The only legal authority Kennedy cites in support of this argument is Duncan v. Rossuck, 621 So.2d 1313, 1315-16 (Ala.1993), in which this Court noted that the “measure of damages for the breach of a contract involving the sale of land is the difference between the contract price and the market value of the land on the date of the breach.” Kennedy then contends that such a calculation does not apply to this case and that “[t]he controlling cases here are those involving tender by the debtor of prepayment of the mortgage. The tender cases hold that where a debtor makes a legally sufficient tender that is kept good, interest stops as of the date of tender.” Kennedy’s brief, at p. 51. Kennedy provides no authority to support these contentions. Rule 28(a)(10), Ala. R.App. P., requires that the argument in an appellant’s *74 brief include “citations to the cases, statutes, [and] other authorities ... relied on.” Consistent with Rule 28, “[w]e have stated that it is not the function of this court to do a party’s legal research.” Spradlin v. Spradlin, 601 So.2d 76, 78 (Ala.1992) (citing Henderson v. Alabama A & M Univ., 483 So.2d 392, 392 (Ala.1986)). “When an appellant fails to cite any authority for an argument on a particular issue, this Court may affirm the judgment as to that issue, for it is neither this Court’s duty nor its function to perform an appellant’s legal research.” City of Birmingham v. Business Realty Inv. Co., 722 So.2d 747, 752 (Ala.1998).
“The law generally allows for the recovery of all damages, including incidental and consequential, caused by the breach of contract or the commission of a tort.” Van Hoof v. Van Hoof, 997 So.2d 278, 298 (Ala.2007) (citing Ex parte Steadman, 812 So.2d 290, 295 (Ala.2001) (“ ‘The general rule as to the measure of damages in breach of contract cases is that damages are recoverable which are the natural and proximate consequence of the breach, and it is that sum which would place the injured party in the same condition he would have occupied if the contract had not been breached.’ ” (quoting Brendle Fire Equip., Inc. v. Elec. Eng’rs, Inc., 454 So.2d 1032, 1034 (Ala.Civ.App.1984))).
We must determine whether a damages award of $3.65 million on BI and Boles’s breach-of-contract claim is palpably erroneous or manifestly unjust. See Black Diamond Dev., Inc. v. Thompson, 979 So.2d 47, 52 (Ala.2007) (“It is well established that ‘[w]hen a trial court hears ore tenus testimony “its findings on disputed facts are presumed correct and its judgment based on those findings will not be reversed unless the judgment is palpably erroneous or manifestly unjust.” ’ ” (quoting New Props., L.L.C. v. Stewart, 905 So.2d 797, 799 (Ala.2004), quoting in turn Philpot v. State, 843 So.2d 122, 125 (Ala.2002))). During the two-day bench trial, BI and Boles presented evidence indicating that as a consequence of Kennedy’s dissatisfaction with BI’s agreement to sell the property to Hall for $16 million and BI’s intention to prepay the note, Kennedy refused the prepayment tender and filed this action and the notice of lis pendens on the property. BI and Boles produced evidence indicating that as a consequence of the lis pendens on the property they were unable to sell the property to interested parties and to make a profit of at least $3.65 million from those sales.[6] Specifically, Cameron Price, a former employee of WCI, characterized the lis pendens on the property as a “deal killer,” and he testified that the lis pendens prevented WCI from purchasing the property from Boles for as much as $16.5 million. BI and Boles also presented evidence indicating that the property could have easily been rezoned to a multifamily classification and that as of June 2005, the property, with a multifami *75 ly classification, had been appraised at $17.5 million and at $15 million. In light of this ore tenus evidence, we cannot say that the trial court’s award in its November 3, 2008, judgment of $3.65 million to compensate BI and Boles for the loss of the resale value of the property as a consequence of Kennedy’s breach of the promissory note is clearly erroneous, without supporting evidence, manifestly unjust, or against the great weight of the evidence. See Pollard, 902 So.2d at 23.

IV Conclusion

Based on the foregoing, the trial court’s November 3, 2008, judgment is affirmed.
AFFIRMED.
COBB, C.J., and LYONS, WOODALL, STUART, BOLIN, PARKER, and SHAW, JJ., concur.
MURDOCK, J., concurs in the result.

. The penalty amount appears to be based on the principal amount of $3.33 million.

. Kennedy argues that the filing of his notice of appeal on January 24, 2006, divested the trial court of jurisdiction on the issues subject to the appeal and that, therefore, the January *66 30, 2006, order is a nullity. We do not agree. The January 11, 2006, order was not an effective Rule 54(b), Ala. R. Civ. P., certification of finality because the order is unclear as to whether the trial court intended to rule in favor of BI and Boles on each of Kennedy’s claims against BI and Boles and on BI and Boles's counterclaim for injunctive relief, or to rule in favor of BI and Boles on only the claims referenced in Kennedy's declaratory-judgment motion and on BI and Boles's counterclaim for injunctive relief. Had Kennedy appealed from the January 11, 2006, order, this Court would have remanded the cause for clarification of the order. The January 30, 2006, order serves this purpose by clarifying that the trial court had converted Kennedy's declaratory-judgment motion to a Rule 56, Ala. R. Civ. P., summary-judgment motion and that the January 11, 2006, order denied that motion and granted BI and Boles’s summary-judgment motion. Kennedy, in his brief to this Court appealing the partial summary judgment (case no. 1050543), did not argue that the January 30, 2006, order is a nullity. Rather, in that brief, Kennedy asserted that, "on January 30, the Trial Court amended its order granting Defendants' request for preliminary/permanent injunctive relief and dismissed Kennedy’s claims. Kennedy timely appealed these orders.” Kennedy’s brief in case no. 1050543, at p. 5. Accordingly, this Court reviewed the January 30, 2006, order in case no. 1050543 and affirmed without an opinion. Kennedy v. Boles Inv., Inc. (No. 1050543, Feb. 15, 2008), 28 So.3d 37 (Ala.2008) (table). See Butler v. Olshan, 280 Ala. 181, 187-88, 191 So.2d 7, 13 (1966) (holding that this Court may take judicial notice of its own records in another proceeding when a party refers to the proceeding).

. Section 7-3-101 et seq., Ala.Code 1975, governs negotiable instruments such as promissory notes.

. Section 6-8-100, Ala.Code 1975, provides, in pertinent part: “An answer of tender of money or of a thing in action must be accompanied by a delivery of the money or such thing in action to the clerk' of the court.”

. On appeal, BI and Boles do not contend that they are immune from the door-closing statute because their activities are interstate as opposed to intrastate. See TradeWinds Envtl. Restoration, Inc. v. Brown Bros. Constr., L.L.C., 999 So.2d 875, 879 (Ala.2008) (" '[Businesses engaged in interstate commerce are protected by the commerce clause in the United States Constitution, U.S. Const., Art. I, § 8, cl. 3, and are therefore immune from the effects of the "door closing” statutes.’ ” (quoting Stewart Mach. & Eng'g Co. v. Checkers Drive In Rests, of N. America, Inc., 575 So.2d 1072, 1074 (Ala.1991))).

. In an April 2, 2009, "Order Fixing Amount of Supersedeas Bond,” the trial court set the bond necessary to stay execution on the November 3, 2008, judgment at $810,625. The order states that the trial court calculated this figure
"by taking the difference between the $3,650,000 judgment in favor of BI and Boles and the $3,330,000 principal balance due Kennedy under the Promissory Note ($320,000), and adding nine months of post-judgment interest at 12% on the $3,650,000 ($328,500). The sum of these figures being $648,500 with 125% of the figure yielding $810,625.”
Thus, we note that under the trial court's rationale BI and Boles remain liable on the promissory note. As discussed in Part III.C above, however, Kennedy is not entitled on this record to a judgment on the note. Whether future events might warrant such relief is obviously a question not before us.