Rel: May 17, 2024

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**.  Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is printed in **Southern Reporter**.

# SUPREME COURT OF ALABAMA

## OCTOBER TERM, 2023-2024

_____

### SC-2023-0861
_____

**Meg M. Jamison, individually and as personal representative of the Estate of John W. Jamison III, deceased**

**v.**

**SNH AL Crimson Tenant, Inc., d/b/a Morningside of Vestavia Hills and Five Star Senior Living Community**


**Appeal from Jefferson Circuit Court
(CV-22-902146)**


COOK, Justice.

This is an appeal of an order compelling arbitration. As explained below, we normally apply the procedures applicable to motions for a summary judgment to motions seeking to compel arbitration. Because we conclude that the plaintiff below was entitled to respond to new evidence filed with the defendant's reply, we reverse.

Meg M. Jamison, both individually and as the personal representative of the estate of John W. Jamison III, appeals from the Jefferson Circuit Court's order compelling arbitration of her claims against SNH AL Crimson Tenant, Inc., d/b/a Morningside of Vestavia Hills and Five Star Senior Living Community ("Morningside"), the owner of an assisted-living facility in Birmingham.

In December 2018, John was admitted into Morningside's assisted-living facility, where he remained until November 2020. In July 2022, John's wife and permanent guardian, Meg, filed a lawsuit against Morningside for damages stemming from the alleged mistreatment of John while he was a resident of the assisted-living facility. Approximately eight months later, Morningside moved to compel arbitration of the action based on an arbitration agreement purportedly signed by John's temporary guardian and conservator at the time of his

admission into the assisted-living facility. The circuit court granted Morningside's motion to compel arbitration.

For the reasons explained below, we reverse the circuit court's order and remand the action to the circuit court for further proceedings consistent with this opinion.

Procedural History and Facts

This is not the first time Meg has appeared before this Court. In April 2021, we granted her petition for a writ of mandamus directing the Jefferson Probate Court to set aside its order issuing Gregory Hawley temporary letters of guardianship and conservatorship over John that automatically renewed every 30 days. Ex parte Jamison, 336 So. 3d 175 (Ala. 2021). Because some of the facts and procedural history in that case are relevant to the present appeal, we deem it necessary to relate them here.

I. Prior Mandamus Proceeding

In June and September 2018, the Jefferson County Department of Human Resources ("DHR") received reports alleging that John suffered from dementia and that his wife, Meg, was physically, verbally, and emotionally abusing him. Id. at 176. As a result of its investigation into

those reports, DHR initiated two separate proceedings -- one in the circuit court and the other in the probate court. Id. at 177.

First, on September 28, 2018, DHR filed, pursuant to the Adult Protective Services Act, § 38-9-1 et seq., Ala. Code 1975, a petition in the circuit court alleging that John needed emergency protective placement ("the adult-protective-services action"). Id. On October 1, 2018, the circuit court entered an emergency order authorizing DHR to transport John to Grandview Medical Center for a complete physical and mental examination pending a final hearing in the adult-protective-services action. Id. John was subsequently transported to Grandview Medical Center for evaluation and treatment. Id.

A preliminary hearing in the adult-protective-services action took place on October 11, 2018. Id. At that time, Meg filed a motion to intervene in the action, which the circuit court granted. Id. Following the hearing, the circuit court entered an order finding that John should remain in the care of Grandview Medical Center pending a final trial set for November 9, 2018. Id.

The following day, on October 12, 2018, DHR filed in the probate court, pursuant to the Alabama Uniform Guardianship and Protective

4

Proceedings Act, § 26-2A-1 et seq., Ala. Code 1975, (1) an emergency petition seeking the appointment of a temporary guardian and conservator for John and (2) a petition seeking the appointment of a permanent guardian and conservator for John ("the guardianship and conservatorship action"). Id.

In November 2018, DHR filed an emergency motion asking the circuit court to order Meg to sign John into Morningside's assisted-living facility pending a final hearing in the adult-protective-services action.[1] Id. at 178. Meg initially objected, but, on December 19, 2018, the circuit court, by agreement of the parties, ordered that John be immediately transferred to the assisted-living facility. Id.

Meanwhile, after several continuances in the probate court, an emergency hearing in the guardianship and conservatorship action took place. Id. On December 19, 2018, the probate court entered an order appointing Hawley as temporary guardian and conservator for John. Id. That order stated that the "'temporary letters of guardianship and conservatorship are automatically renewed every thirty (30) days

---

[1]A durable power of attorney previously executed by John authorized Meg to act as his agent and medical proxy.

without action by [the probate] court'" and revoked all powers of attorney previously executed by John. Id. The probate court also set a final hearing on the petition for permanent letters of guardianship and conservatorship for March 20, 2019. The temporary letters of guardianship and conservatorship, however, were not issued to Hawley until December 26, 2018.[2] Those letters indicated that the temporary letters "RENEW[ED] EVERY 15 DAYS UNTIL March 20, 2019." (Capitalization in original.)

On February 3, 2019, DHR, with the consent of the other parties, filed a motion to dismiss the adult-protective-services action in the circuit

_____

[2]In her brief, Meg argues that the temporary letters "effectuate the granting of any legal power." Meg's brief at 42 n.4. Although our decision in Ex parte Jamison did not specifically state the date on which the temporary letters of guardianship and conservatorship were issued to Hawley and the record in the present appeal does not include a copy of the letters, both parties in this case reference Ex parte Jamison and copies of those temporary letters were submitted to this Court in that mandamus proceeding. "'[T]his Court may take judicial notice of its own records in another proceeding when a party refers to the proceeding.'" SMM Gulf Coast, LLC v. Dade Cap. Corp., 311 So. 3d 736, 744 n.2 (Ala. 2020) (quoting Kennedy v. Boles Invs., Inc., 53 So. 3d 60, 66 n.2 (Ala. 2010)).

court based on the probate court's appointment of a temporary guardian and conservator for John.[3] Id.

After several delays, a hearing on the petition for permanent letters of guardianship and conservatorship took place in the probate court on November 19, 2019. Id. at 180. Following that hearing, on January 23, 2020, "the probate court entered a judgment purporting to grant permanent letters of guardianship and conservatorship for John." Id. Meg, however, filed a motion to alter, amend, or vacate the January 23, 2020, judgment, arguing, among other things, that the probate court "had lacked the authority to enter that judgment because, she asserted, DHR had failed to notify John of the November 19, 2019, hearing in accordance with § 26-2A-103, Ala. Code 1975." Id.

On May 20, 2020, the probate court revoked its January 23, 2020, judgment purporting to grant permanent letters of guardianship and

_____

[3]The copy of DHR's motion to dismiss that was submitted to this Court in Ex parte Jamison stated that "[o]n or about December 26, 20[1]8, [the probate court] found John … to be a person in need of protection and appointed both a [t]emporary guardian and a [c]onservator to protect the rights of [John] pending a final hearing on this matter." That motion further stated that, because of Hawley's appointment as John's temporary guardian and conservator, John "no longer [met] the legal definition of an Adult in Need of Protective Services" and that the action in the circuit court was therefore due to be dismissed.

conservatorship over John due to John's lack of notice and stated that the petition for permanent letters would be reset for hearing. Id. at 181. The probate court additionally renewed its order granting temporary letters of guardianship and conservatorship over John and asserted that the temporary letters would automatically renew every 30 days until the probate court entered a permanent judgment in the matter. Id. A final hearing was set for August 18, 2020. Id.

On July 31, 2020, Hawley, in his capacity as John's temporary guardian and conservator, consented to John's placement in hospice care at Morningside's assisted-living facility. Id. Pursuant to the administrative orders issued by this Court in response to the COVID-19 pandemic, the final hearing previously set for August 18, 2020, was also postponed. Id. at n.6. On August 26, 2020, DHR moved to extend Hawley's temporary letters of guardianship and conservatorship. Id. at 181. A few days later, on August 31, 2020, Meg petitioned this Court for a writ of mandamus directing the probate court to "set aside its May 20, 2020, order automatically renewing temporary letters of guardianship and conservatorship regarding John." Id. at 176.

In our opinion granting Meg's petition for a writ of mandamus, we held that the probate court could not issue temporary letters of guardianship and conservatorship that automatically renewed every 30 days. Id. at 188. Because we concluded "that the automatic-renewal portion of the probate court's May 20, 2020, order [was] void," we directed the probate court to "determine whether an emergency still exist[ed] necessitating a temporary guardian for John." Id. at 189.

Following our decision, Meg was appointed as John's permanent guardian.

II. Present Appeal

In July 2022, the Jamisons sued Morningside in the circuit court. The lawsuit stemmed from the allegedly negligent medical care John received while a resident at Morningside's assisted-living facility. According to the Jamisons, Morningside breached the prevailing standard of care by conspiring to misdiagnose, overmedicate, and wrongfully certify John as eligible for hospice care. Their complaint asserted claims alleging (1) negligence, (2) wantonness, (3) loss of consortium, (4) civil conspiracy, (5) the tort of outrage and intentional infliction of emotional distress, and (6) false imprisonment.

9

On March 1, 2023, Morningside moved to compel arbitration based on an arbitration agreement purportedly signed by Hawley. That motion alleged that, "[o]n or about <u>May 4, 2020</u>, the [probate court] granted an [e]mergency [p]etition for [l]etters of [g]uardianship and [c]onservatorship over [John] to [Hawley]." (Emphasis in original.) The motion further alleged that Hawley, in his capacity as John's guardian and conservator, executed a residency agreement with Morningside "[o]n or about <u>December 19, 2018</u>" and that he subsequently executed an arbitration agreement with Morningside "[o]n or about <u>December 20, 2018</u> …." (Emphasis in original.)

In support of its motion to compel, Morningside submitted five exhibits that included: (1) an order from the probate court appointing Hawley as John's temporary guardian ("the temporary-appointment order"), (2) an order from the probate court prohibiting any party from interfering with John's placement at Morningside's assisted-living facility, (3) a "Residency Agreement" signed by Hawley and Yarlardo Henderson-Peals, acting as agent for Morningside, on "12/19/2018," (4) a "Voluntarily Executed Mutual Arbitration Agreement" that was predated December 20, 2018, but was signed by Hawley and Henderson-

10

Peals on "12/27/2018,"[4] and (5) an affidavit from Pamela Davidson, Morningside's office manager, stating that Morningside is involved in interstate commerce and that the "Residency Agreement" dated "December 19, 2019" between Morningside and Hawley "is a true, accurate, and correct" copy of the agreement entered on that date ("Davidson's first affidavit").

On March 22, 2023, the circuit court entered an order granting the Jamisons "leave to file a response by April 7, 2023, at which time the matter will be taken under submission."

On April 7, 2023, the Jamisons filed an objection to Morningside's motion to compel and moved to strike the exhibits submitted in support of that motion. In that filing, the Jamisons challenged the admissibility of all five exhibits. Specifically, they alleged that Davidson's first affidavit was deficient and inadmissible because she (1) referred to an agreement dated "December 19, 20<u>19</u>," when the copy of the "Residency Agreement" attached to Morningside's motion was dated "12/19/20<u>18</u>"

---

[4]The arbitration agreement states: "**YOUR DECISION TO ENTER THIS AGREEMENT IS VOLUNTARY AND NOT A CONDITION OF ADMISSION TO THE COMMUNITY.**" (Capitalization and bold typeface in original.)

(emphasis added), (2) failed to aver that she was employed by Morningside or present when the "Residency Agreement" was signed, and (3) did not indicate that she had any personal knowledge that could authenticate the parties' signatures on the "Residency Agreement."

The Jamisons next emphasized that the copy of the temporary-appointment order, which was attached as an exhibit labeled "5/4/2020 Probate Court Order" (emphasis added), was unsigned, undated, and appeared to be missing a page. They further argued that neither of the two probate-court orders attached to Morningside's motion were relevant to the existence of an alleged arbitration or residency agreement and that neither order was authenticated or certified. According to the Jamisons, moreover, even if the orders were authenticated and certified, Morningside's claim that the probate court had entered an order granting an emergency petition for letters of guardianship and conservatorship on May 4, 2020, would not support the existence of a binding arbitration agreement signed in 2018 or 2019.

The Jamisons further challenged the submitted residency agreement and arbitration agreement, arguing that those purported agreements were not authenticated by Davidson in her first affidavit and

that there was a complete lack of evidence showing that Hawley had authority to act as the legal representative for John at the time those agreements were entered. Moreover, they argued that -- even assuming that the residency agreement was valid -- that agreement provided that "the [a]ttachments and documents referenced in this [a]greement constitute the entire agreement between you and us regarding your residency" and made no reference to any arbitration agreement. Thus, according to them, there was no evidence indicating that the purported arbitration agreement signed by Hawley on December 27, 2018, was binding on the Jamisons.

Finally, in the event that the circuit court found that a valid and binding arbitration agreement did exist, the Jamisons raised affirmative defenses to the enforcement of that agreement. In particular, they argued that the arbitration agreement was unconscionable and that Morningside had waived any right to arbitration by failing to "abide by or initiate arbitration proceedings pursuant to the terms of its own Arbitration Agreement." (Emphasis in original.)

Based on the foregoing, the Jamisons urged the circuit court to deny Morningside's motion to compel arbitration.

13

On April 8, 2023, the Jamisons moved to supplement the previous day's filing, explaining that Meg's affidavit was mistakenly not attached to their objection and motion to strike. In that affidavit, Meg testified that she was John's court-appointed guardian as well as his agent under his durable power of attorney, and she denied ever signing an arbitration agreement with Morningside either for herself or on behalf of John. She further stated that, in late 2020, she requested and received documents related to John's agreements with Morningside and that there were no documents pertaining to any arbitration agreement in the materials she received. According to Meg, "[o]ne of the documents [she] did receive from Morningside in or around late 2020, was a copy of the Residency Agreement which was incomplete[,] and the table of contents referenced no provision or attachment for arbitration."

On April 13, 2023, Morningside filed a motion asking the trial court to allow it "thirty (30) days to file a Brief in Response to the Motion to Strike and Opposition to Motion to Compel Arbitration, so that [it could] address the grounds raised in [the Jamisons' motion]." Morningside did not, however, move to supplement its motion to compel or to submit

14

additional evidence pursuant to Rule 56(e), Ala. R. Civ. P. The circuit court granted Morningside's motion on April 18, 2023.

Morningside filed a reply to the Jamisons' objection and motion to strike on May 18, 2023. Morningside stated that it had mistakenly identified the temporary-appointment order as a May 4, 2020, order and acknowledged that the previously submitted order was missing the signature and date pages. Morningside explained that it had since acquired the entirety of that order and attached that version to its reply.

That new version of the temporary-appointment order indicated that, on December 19, 2018, the probate court appointed Hawley as John's temporary guardian and conservator with the powers set out in § 26-2A-78 and § 26-2A-152, Ala. Code 1975. According to Morningside, it could therefore not be disputed that "Hawley had the actual authority to act on behalf of [John] at the time of [John's] entry to" Morningside's assisted-living facility on December 19, 2018.

Morningside also attached an amended affidavit from Davidson in which she changed the date of the "Residency Agreement" from December 19, 20<u>19</u>, to December 19, 20<u>18</u>, and added the statement that "the Admission Agreement, <u>including the incorporated Arbitration</u>

15

<u>agreement</u>, was made and kept in the regular and ordinary course of business by Morningside." (Emphasis added.)

The following day, on May 19, 2023, the circuit court entered an order granting Morningside's motion to compel arbitration. The circuit court's order stated as follows:

> "The court concludes that Morningside has met its burden of showing (i) the existence of a written agreement containing an arbitration provision that covers this dispute, signed by a representative with authority to bind the plaintiffs; and (ii) the requisite nexus to interstate commerce. Further, the plaintiffs have not shown why the arbitration provision should not apply. In particular, the court concludes that Morningside has not waived its right to arbitrate in the absence of evidence that arbitration would work substantial prejudice on the plaintiffs.
>
> "The claims against Morningside are therefore stayed pending arbitration. The plaintiffs are directed to promptly initiate arbitration proceedings in accordance with the agreement between the parties."

The circuit court granted Morningside's motion to compel arbitration without ruling on the Jamisons' motion to strike the exhibits initially submitted in support of Morningside's motion to compel.

The Jamisons subsequently filed a Rule 59(e), Ala. R. Civ. P., motion. In that motion, the Jamisons asked the circuit court to vacate its order compelling arbitration. Alternatively, the Jamisons asked that the

16

circuit court stay the order and provide them with the opportunity (1) to respond to the new evidence presented in Morningside's May 18, 2023, reply and (2) to depose the parties who allegedly executed the postdated arbitration agreement. The circuit court denied that motion on July 17, 2023. The Jamisons appealed to this Court.

While this appeal was pending, John died. Meg, as personal representative of John's estate, was substituted as an appellant in place of John pursuant to Rule 43, Ala. R. App. P.

## Standard of Review

> "We review de novo the [grant or] denial of a motion to compel arbitration. Springhill Nursing Homes, Inc. v. McCurdy, 898 So. 2d 694, 696 (Ala. 2004). The party seeking to compel arbitration has the burden of proving both that a contract calling for arbitration exists and that the contract evidences a transaction affecting interstate commerce. McCurdy, 898 So. 2d at 696. Once this prima facie showing has been made, the burden then shifts to the party opposing arbitration to present substantial evidence indicating that the supposed arbitration agreement is either invalid or inapplicable to the dispute as to which arbitration is being sought. Unum Life Ins. Co. of America v. Wright, 897 So. 2d 1059, 1081 (Ala. 2004)."

Patriot Mfg., Inc. v. Jackson, 929 So. 2d 997, 1000 (Ala. 2005).

## Discussion

On appeal, Meg raises both procedural and substantive challenges to the circuit court's order compelling arbitration in this case. In particular, she argues that the circuit court failed to provide the Jamisons with a reasonable opportunity to respond to the new arguments and evidence presented in Morningside's May 18, 2023, reply before granting the motion to compel arbitration on May 19, 2023. According to Meg, that failure amounted to a denial of procedural due process, and, she asserts, this Court should ignore the new evidence in deciding whether the circuit court's order compelling arbitration was proper. She further contends that the circuit court could not have properly concluded that Morningside met its burden of establishing the existence of a valid and binding arbitration agreement based on the evidence initially attached to Morningside's motion to compel arbitration. We address each argument in turn.

Meg argues that the Jamisons did not have a reasonable opportunity to respond to the new materials appended to Morningside's May 18, 2023, reply before the circuit court entered its May 19, 2023, order compelling arbitration. According to her, if the circuit court considered those new materials in ruling on the motion to compel

18

arbitration, it violated their right to procedural due process. She urges that this Court's review of the circuit court's order should be based on only the evidence submitted with Morningside's motion to compel arbitration.

This Court has repeatedly held that a "motion to compel arbitration is analogous to a motion for a summary judgment." TranSouth Fin. Corp. v. Bell, 739 So. 2d 1110, 1114 (Ala. 1999). Thus, the procedures set forth in Rule 56, Ala. R. Civ. P., regarding a motion for a summary judgment also apply to a motion to compel arbitration. See Ex parte Greenstreet, Inc., 806 So. 2d 1203, 1207 (Ala. 2001).

Rule 56(c)(2), Ala. R. Civ. P., provides, in pertinent part:

> "Time. The motion for summary judgment, with all supporting materials, including any briefs, shall be served at least ten (10) days before the time fixed for the hearing, except that a court may conduct a hearing on less than ten (10) days' notice with the consent of the parties concerned. …"

(Emphasis added.) As we have explained, "[o]ne purpose of the procedural rights to notice and hearing under Rule 56(c) is to allow the nonmoving party the opportunity to discover and to present evidence opposing the motion for summary judgment." Van Knight v. Smoker, 778 So. 2d 801, 805 (Ala. 2000).

19

Applying, by analogy, the practice under Rule 56(c), the Jamisons were entitled to a reasonable opportunity to respond to the new and material evidence presented with Morningside's May 18, 2023, reply. As previously noted, however, the circuit court ruled on Morningside's motion to compel arbitration on May 19, 2023 -- exactly one day after that evidence was presented to the circuit court. We therefore conclude that, to the extent that the circuit court relied on the newly submitted evidence in granting the motion to compel arbitration, that reliance was improper and deprived the Jamisons of a meaningful opportunity to respond to that evidence. See Brown v. Piggly-Wiggly Stores, 454 So. 2d 1370, 1371 (Ala. 1984) ("[F]ailure to comply with the ten-day notice requirement articulated in [Ala.] R. Civ. P. 56(c) denies the opposing party an opportunity to present adverse evidence and therefore constitutes reversible error.").

Importantly, "noncompliance with the 10-day-notice requirement does not constitute reversible error absent a showing of actual prejudice." Tucker v. Richard M. Scrushy Charitable Found., Inc., 93 So. 3d 83, 87 (Ala. 2012). Here, although Morningside appears to concede that the circuit court could not have properly relied on the evidence attached to

20

its May 18, 2023, reply in granting the motion to compel arbitration, it argues that the circuit court's failure to provide the Jamisons with a reasonable opportunity to respond to that evidence was harmless because the materials attached to Morningside's motion to compel arbitration were sufficient, by themselves, to support the circuit court's order. We disagree.

As previously noted, "[t]he party seeking to compel arbitration has the burden of proving the existence of a contract calling for arbitration and proving that that contract involves a transaction affecting interstate commerce." Ex parte Caver, 742 So. 2d 168, 172 n.4 (Ala. 1999). To make the required showing, the moving party must submit substantial evidence. See Ball Healthcare Servs., Inc. v. Flennory, 371 So. 3d 239, 242 (Ala. 2022); Ex parte Cain, 838 So. 2d 1020, 1026 (Ala. 2002).

Further, this Court has held that "the rules governing the admission of affidavits supporting or opposing a motion for a summary judgment as stated in Rule 56(e), Ala. R. Civ. P., apply to affidavits supporting or opposing a motion to compel arbitration." SSC Selma Operating Co. v. Gordon, 56 So. 3d 598, 602 (Ala. 2010). As relevant here, Rule 56(e) "generally requires that '[s]worn or certified copies' of

21

documents referred to in an affidavit offered supporting or opposing a motion for a summary judgment be attached to the affidavit." Elizabeth Homes, L.L.C. v. Cato, 968 So. 2d 1, 4 (Ala. 2007). We have additionally stated:

> "An affidavit filed in support of, or in opposition to, a summary judgment motion will not be considered by the court unless it is based on personal knowledge. Perry v. Mobile County, 533 So. 2d 602 (Ala. 1988). Such an affidavit must be based on facts, may not consist of bare conclusory statements, and must contain information that allows more than speculative or conjectural inferences. Perry, supra. Documents submitted as exhibits to affidavits or otherwise must be admissible in evidence either as sworn or certified copies. Perry, supra."

Carter v. Cantrell Mach. Co., 662 So. 2d 891, 893 (Ala. 1995) (plurality opinion).

The materials attached to Morningside's motion to compel arbitration included (1) Davidson's first affidavit, (2) the temporary-appointment order, (3) a "Residency Agreement" signed by Hawley on "12/19/2018," and (4) a "Voluntarily Executed Mutual Arbitration Agreement" signed by Hawley on "12/27/18." Crucially, Davidson's first affidavit did not refer to any arbitration agreement, much less the arbitration agreement submitted by Morningside. Although Davidson's first affidavit did mention an admission agreement dated December 19,

22

2019, the actual "Residency Agreement" attached to the motion was dated December 19, 2018. Further, although Davidson's first affidavit characterized Hawley as "[John's] Authorized Representative on [December 19, 2019]," the affidavit did not state facts that established her competency to testify to the fact. See Carter, 662 So. 2d at 893 (stating that affidavit "may not consist of bare conclusory statements"). The undated, unsigned, and incomplete temporary-appointment order attached to the motion to compel also did not establish Hawley's authority to bind John on that -- or any other -- date.

Based on the above, we cannot conclude that the materials appended to Morningside's motion to compel arbitration amounted to substantial evidence of the existence of a valid arbitration agreement signed by a representative with authority to bind the Jamisons. Accordingly, the circuit court's error in depriving the Jamisons of an opportunity to respond to the new materials attached to Morningside's May 18, 2023, reply was not harmless, and its order compelling

arbitration should be reversed pending further development of the factual record.[5]

## Conclusion

For the reasons stated above, we reverse the circuit court's order compelling arbitration and remand the action to the circuit court for further proceedings consistent with this opinion.

REVERSED AND REMANDED WITH INSTRUCTIONS.

Parker, C.J., and Wise, Sellers, and Stewart, JJ., concur.

---

[5]Because we reverse and remand based on the circuit court's failure to allow the Jamisons an opportunity to respond to the new materials attached to Morningside's reply, we pretermit discussion of the other legal arguments raised by Meg on appeal.